[L. A. No. 1014.    Department One.—February 28, 1902.]

## MALCOLM H. FRENCH, Respondent, v. CHARLES L. POWELL, and NATIONAL SURETY COMPANY, Appellants.

CONTRACT FOR STATE OR CITY WORK—CLAIMS FOR MATERIALS AND LABOR—CONSTRUCTION OF STATUTE—MATURITY OF ACTION UPON BOND.— The act of March 27, 1897, which provides for the filing of verified claims for materials furnished or labor done for the contractor under a contract for building, excavation, or other mechanical work for the state, or for any city, is distinct from and independent of the general mechanics' lien law, and the surety on the contractor's bond provided for in the act, may be sued by a material-man or laborer, as soon as the contractor may be sued by them, provided the claim is filed within thirty days after the debt is due from the contractor; and the debtor is not required to wait for the final completion of the work by the contractor.

ID.—DEFINITION—MEANING OF "WITHIN."—The word "within," used in the statute, means "not beyond," and any act is "within" the time named therefor, when it does not extend beyond it.

ID.—ASSIGNMENT OF CONTRACT—CONSENT OF SURETY AND OF CITY— SURETY NOT RELEASED.—Under a contract for city work, the original contractor for the work cannot shift the burden of the obligation of the bond to material-men and laborers by assigning the contract, with the consent of the surety and of the city, without the consent of the parties entitled to sue upon the bond.

ID.—EXCAVATION OF TUNNEL—TEAMSTER, HORSES, AND SCRAPER—SERVICES OF BLACKSMITH—VALIDITY OF CLAIM.—Where, by the terms of the bond, the obligors contracted to pay for "any work of any kind" done for the excavation of a tunnel contracted for, the claims of one who furnished a teamster and horses and scraper for the work, at an agreed price per day for the outfit, and the claim of a blacksmith for services required to carry out the contract, are valid and enforceable in an action upon the bond.

APPEAL from a judgment of the Superior Court of Los Angeles County.    M. T. Allen, Judge.

The facts are stated in the opinion.

Foley & Rowell, and Goodrich & McCutchen, for Appellants.

John D. Pope, for Respondent.

CHIPMAN, C.—Plaintiff's complaint sets forth three causes of action upon a bond executed by defendant Powell, as principal, and defendant company, as surety, under the provisions of the act of March 27, 1897, (Stats. 1897, p. 201). It is alleged that Powell entered into an agreement with the city of Los Angeles on February 8, 1899, to construct a tunnel in Third Street, from Hill to Flower Street, and to furnish at his own cost all the labor and material necessary therefor, and that said work was never completed; that defendants entered into a written undertaking as provided for in the above act. For a first cause of action it is alleged that plaintiff furnished the said Powell the work of certain teams during the months of July, August, and September, 1899, at an agreed price per day for each team and man, amounting in value, in all, to $514.75, and that said work of said teams was completed on the ninth day of September, 1899; that all said work was "furnished for and actually used in the construction of said tunnel under said contract," and that on March 19, 1900, plaintiff filed with said council a verified statement of his said claim, with a statement that the same had not been paid.

A second cause of action sets forth that one Clapham performed labor for said Powell as a blacksmith during the same months as above named, at the agreed price of three dollars per day, amounting in all to $154; that his said work was completed September 6, 1899, and that said labor was performed in the construction of said tunnel under said contract; that said Clapham filed a verified statement of his said claim with said council on March 19, 1900, and on the same day assigned to plaintiff his claim as aforesaid and all his rights against the defendant company.

For a third cause of action, and by similar allegations, plaintiff sets forth the claim of one French for one day's labor, in the month of July, 1899, as superintendent of the work on said tunnel, at the agreed price of $2.50; alleges the filing of the claim and its assignment the same as in the case of said Clapham. Appended to the complaint are copies of the itemized claims filed with the council. Defendants answered, controverting the allegations of the complaint, and, as a separate defense, pleaded the act in bar, alleging that notice of the several claims was not filed within the time re-

quired by the act. The contract between Powell and the city was executed February 8, 1899, and is fully set forth in the findings; the court found that Powell assigned all his interest in this contract on May 10, 1899, to the firm of Swenson & Hill; that since said date Swenson & Hill have been engaged in carrying out said contract, "and with the knowledge and approval of said municipal corporation; and all payments of money by said contract provided to be made to said Powell have been made direct to Swenson & Hill by said corporation, as said payments have come due under the contract," and since said assignment to Swenson & Hill said Powell has done no work and "has never performed any part of said contract." On May 17, 1899, Swenson & Hill let a contract, which is fully set forth, to one Chaffey to do the excavating, grading, and filling required by the contract, and Chaffey immediately entered upon the work; plaintiff furnished said Chaffey the teams mentioned in the first cause of action, at Chaffey's request, at the price of $514.75, and the same were used in and about the work of excavating said tunnel. Clapham, mentioned in the second cause of action, was employed by Chaffey, and performed blacksmith-work near said tunnel, sharpening tools and implements, to be used, and which were used, in said tunnel, and also he did work on a boring-machine used therein, and his work was of the value of $154. Said French, mentioned in the third cause of action, was employed at the request of Chaffey to oversee the laborers engaged in the work of excavating said tunnel, at the agreed price of $2.50. The claims of Clapham and French were properly assigned to plaintiff. The work contracted to be performed by Powell has never been completed, and the work is still in progress, and the work let to Chaffey by Swenson & Hill has never been completed, and is still in progress. The assignment of the contract by Powell to Swenson & Hill was with the consent and approval of the defendant company, and it agreed to stand as surety for Swenson & Hill in place of Powell, and ever since then Swenson & Hill have paid all premiums on said bond set forth in the complaint, and said company has accepted the same from them. All claims were filed and verified as alleged in the complaint, and, as filed, were made out against Powell, and not against Swenson & Hill or Chaffey. As conclusion of law, the court found that plain-

tiff was entitled to recover judgment against both defendants
for the several amounts claimed, and judgment was entered
accordingly.   Defendants appeal from the judgment on the
judgment-roll.

1. Apellants   contend   that   the   suit   is   prematurely
brought, for the reason, as appellants construe the terms of
the act, that the claims must be filed within thirty days *after*
the completion of the *whole work*.   In other words, that the
expression, "shall within thirty days from the time such
work is completed," etc., fixes the beginning and the ending
of the time within which the claim *must* be filed.

On the other hand, respondent contends "that this language
was meant simply to set a limit of time after which such
claims could not be filed, and not to forbid the filing of a
claim before the completion of the whole work, provided the
claimant's demand is past due."   Section 1 requires that—
"Every contractor . . .   to whom is awarded a contract for
the . . .   performance of any building, excavating, or other
mechanical work for this state, or by any . . . city . . .
therein, shall, before entering upon the performance of such
work, file with the . . . common council . . . a . . . bond
. . . in a sum not less than one-half of the total amount
payable by the terms of the contract; such bond shall be
executed [prescribes by whom], and must provide that if
the contractor . . . fails to pay for any materials or supplies
furnished for the performance of the work contracted to be
done, or for any work or labor done thereon of any kind, that
the sureties will pay the same, . . . provided, that such claims
shall be filed as hereafter required."   Section 2 provides that
"Any material-man, . . . furnishing materials, . . . used in
the performance of the work, . . . or any person who per-
formed work or labor upon the same, . . . whose claim has not
been paid, . . . shall, within thirty days from the time such
work is completed, file with the . . . common council . . . a
verified statement that the same has not been paid.   At any
time within ninety days after the filing of such claim, the per-
son . . . filing the same may commence an action against the
sureties on the bond, specified and required by section 1
hereof."

Appellants' argument is that the act must receive the same
construction as was given section 1187 of the Code of Civil

Procedure, where the language is, "within thirty days after the completion of any building . . . file for record," etc. The court has held that this meant that the claim must be filed after the completion of the contract or building, a filing before completion being held of no effect. (*Roylance* v. *San Luis Hotel Co.,* 74 Cal. 273; *Willamette etc. Co.* v. *Los Angeles College Co.,* 94 Cal. 229.) In the Roylance case it was shown that the purpose of the section was to secure to all claimants an equal advantage against the sum agreed to be paid the contractor for constructing the building. But section 1194 of the same code, relating to liens, furnished a reason for holding that the purpose of the statute was to place liens on a common footing; for that section expressly provided that all mechanics' lien of a certain class should share equally in the land, and this could be accomplished only by compelling lien claimants to postpone enforcement until the completion of the building. In construing section 1184, however, relating to the service of notice upon the owner of the building, it was held that it might be served at any time and operated in the nature of a garnishment and worked an assignment *pro tanto* of the money due or to become due from the owner to the contractor (*Bates* v. *Santa Barbara Co.,* 90 Cal. 543); and it was there said: "The true spirit and merit of the statute is lost sight of in the contention that this remedy is a mere substitute for the remedy by lien, and that where the latter does not exist the former cannot exist." As was said of the right under section 1184, so may it be said of the right under the act in question: "It is a remedy entirely disconnected from and additional to the remedy by lien upon the building; and as the exceptional element, which it is claimed arrests in this case the usual operation of the lien law, does not exist, it is a remedy which should be regarded with favor by the court." (See, also, *Bianchi* v. *Hughes,* 124 Cal. 24; *Sweeney* v. *Meyer,* 124 Cal. 512; *Newport etc. Co.* v. *Drew,* 125 Cal. 585.) This view of section 1184, it is suggested, carries with it necessarily a right of priority; and this may be true; but as no question of priority arises here, no opinion is expressed on the point.

The construction we would give the word "within" is not unusual or strained, as will be seen from cases cited by respondent. "Within ten days after service" of a notice of a

commissioner's report, the term "within" was held to mean "not beyond," a definition given by Worcester and Webster. (*Chicago etc. R. R. Co.* v. *Eubanks,* 32 Mo. App. 184.) And so of the statute of frauds; it was held in *Fay* v. *Fireman's etc. Co.,* 16 Gray, 448: "When time is spoken of, any act is within the time named that does not extend beyond it." And in *Atherton* v. *Corliss,* 101 Mass. 40, a statute provided that a widow might waive the provision for her in her husband's will, "at any time within six months after the probate of the will," it was held that a waiver made two months before probate was sufficient, and it was said: " The main purpose undoubtedly is to fix a time when her right of election shall cease, and the presumption of the statute shall become absolute." And so where a statute which gave a lien on ships required a certificate to be filed "within four days from the time of the vessel's departure from port," it was held that this "allows it to be filed at any time before the expiration of the four days." (*Young* v. *Orpheus,* 119 Mass. 179.) So, also, in the matter of filing claims against an insolvent estate within nine months after declaration of insolvency. A claim was held properly filed before such declaration. (*Levert* v. *Reed,* 54 Ala. 529.)

As there was reason for putting a different construction on the word "within" in respect of filing mechanics' liens, because of the provisions of section 1194, so, also, is there reason for the construction we give to the word as used in the act before us. It had been held that liens could not be enforced against public property, and the legislature, probably for this reason, enacted the law of March 27, 1897. But the act is entirely distinct from and independent of the general mechanic's lien law, and no clause in it indicates that the right to proceed under it by any creditor of the contractor, protected by the bond, is subject to a condition that he must wait the final completion of the work, which may be long delayed, and, as in this case, is not yet completed; and nothing in the statute indicates that he may then only recover a share of the fund in the proportion that his claim bears to all the claims against it. The bond must be for an amount not less than one half the contract price for the work, and the publicity of the bond and the filing of claims are notice to persons dealing with the contractor and of the extent of his

liabilities and resources to meet them; and, besides, laborers and material-men have recourse also to section 1184 of the Code of Civil Procedure, by which they get an additional security, though not by lien, where the work is let by a city or county. (*Bates* v. *Santa Barbara County*, 90 Cal. 543; *First National Bank* v. *Perris Irr. Dist.*, 107·Cal. 55.) We can see no good reason why the act should receive the construction contended for by appellant, while there are reasons why this construction should be rejected. Aside from the long delay which often attends the final completion of public work, and the consequent hardship entailed on laborers if compelled to wait so long, there is the clear right to sue the contractor at any time; and why should his surety, who has taken on himself in some measure the contractor's burden, be in any better position? The statute makes him liable as soon as the contractor is liable, provided only that the creditor files his claim as the law directs. This, we think, he may do without waiting the final completion of the entire work.

2. The question next presented is as to who is liable to plaintiff on the claims the subject of the action. Appellants contend that Powell is not liable, because the findings show that the services were rendered at the request of Chaffey, who was sub-contractor under Swenson & Hill, the assignee of Powell. The bond refers to the contract entered into by Powell with the city, and makes it a part of the bond. The condition of the bond is, that "the above bounden principal [Powell] shall pay or cause to be paid for all work and labor done thereon, of any kind, and for all material and supplies furnished for the performance of said work; . . . if the said principal shall fail to pay for any materials or supplies furnished for the performance of the work contracted to be done, or for any work or labor done thereon of any kind, that the said sureties will pay the same in an amount not exceeding the sum hereinbefore specified" ($44,225), etc. The contract contained the following provision (par. 7): "The contractor will not be permitted to sublet any portion of the work without the consent of the city engineer, and whenever such subletting is permitted the party performing the work will be considered as the agent of the contractor; the latter will be held responsible for all indebtedness incurred by the said agent on account of the work." We do not think that Powell

or his surety could shift the burden of their obligation, the former by assigning the contract, and the latter by consenting to the assignment, without the consent of the parties entitled to its benefits, and such consent was never given by plaintiff or his assignors. (Civ. Code, sec. 1457.) If the city consented, it could not affect their rights. But paragraph 7 of the contract would seem to continue the liability of Powell, even if the city consented to the assignment, and though it may be true, as claimed by appellants, that the provision was for the protection of the city, we see no reason why it may not also be held to protect the laborer; it was part of the contract, and the contract was part of the bond, and certainly nothing in the provision indicates that it was inserted for the exclusive benefit of the city. The court did not find that the city consented to the assignment of the contract to Swenson & Hill; the finding was, that they ''are actually engaged in carrying out and performing the terms of the contract . . . with the knowledge and approval of said municipal corporation,'' and this is not inconsistent with the provisions of the contract, that they were treated as Powell's agents. The finding that the labor was performed at the request of Chaffey does not relieve Powell; for the contract made Chaffey Powell's agent. Plaintiff looked to Powell, as is shown by the claims filed. The terms of the bond are very broad; payment was to be made ''for all work and labor done thereon [the tunnel] of any kind.'' As to the surety company, it expressly agreed to become liable for Swenson & Hill's debts.

3. It is next contended, as to the first cause of action, that as plaintiff performed no labor, and as he furnished a teamster, two horses, and a scraper to Chaffey, the claim should have been made by the teamster, and not by plaintiff, and as this was not done, there is no action against either Powell or the Surety Company. The engagement for the labor of the teamster, horses, and scraper was with plaintiff, for which a gross sum per day was to be paid for the outfit. Plaintiff looked to Powell, and not to Chaffey, and, as we have seen, the contract and bond warranted this, and it was immaterial whether he did the work with his own hands. As to Clapham's services as blacksmith, appellants claim that it was not the kind of labor contemplated by the act, and was not the kind of labor for which a mechanic's lien will be permitted (citing *McCor-*

*mick* v. *Los Angeles etc. Co.,* 40 Cal. 185; *Wilson* v. *Nugent,* 125 Cal. 280; *Adams* v. *Burbank,* 103 Cal. 646); and it is claimed that in *Malone* v. *Big Flat etc. Co.,* 76 Cal. 578, cited by respondent, blacksmith-work was made the subject of a lien on the sole ground that the tools he sharpened belonged to the mine and were part of the mine itself. We do not regard the claim of Clapham as similar to a claim of lien under the mechanic's lien law. The bond and the contract with the city are the source of the obligation, and the obligors agreed to pay for "any work of any kind" done on the tunnel. Clapham furnished the labor, and it was labor such as the contract called for, and he filed the claim in his own name. Appellant admits that the claim of French is good within the meaning of the act, but it is claimed that it is not good against Powell, because he did not incur the debt, and, being prematurely filed, is void for all purposes of the action. For reasons already given the objections are not well taken.

We advise that the judgment be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.    Harrison, J., Garoutte, J., Van Dyke, J.