Submitted without argument February 23, decided March 7, 1911.

## GRANTS PASS TRUST CO. *v.* ENTERPRISE MINING CO.
### CONSOLIDATED WITH
## CONDOR POWER CO. *v.* ENTERPRISE MINING CO.

[113 Pac. 859.]

MINES AND MINERALS—MINING LIEN—"SUPPLIES."

1. Electricity furnished to a mine for illumination or for power constitutes "supplies" within Section 7444, L. O. L., giving any person furnishing materials or supplies for the working or development of any mine a lien upon such mine therefor; a "supply" in its restricted sense meaning any substance consumed with its use, but in its more general sense meaning anything furnished to meet a need, and the term "supplies," as used in the statute, including any substance the use of which might reasonably tend to the working or development of a mine.

Mines and Minerals—Liens—Enforcement—Burden of Proof.

2. Where, in a suit to establish a lien for electricity furnished a mine, consolidated with a suit by another to foreclose a mortgage on the mining property, the evidence showed that the electricity was furnished at the mines in quantities and kinds required by the contract therefor, the burden was upon the mining company or the mortgagee plaintiff to show that it was not used by the mining company; they being the parties who would succeed by such proof.

Mines and Minerals—Liens—Time of Filing.

3. The right to file a proper lien for mining supplies furnished, continued after a futile attempt to file a lien until the expiration of the time allowed to file an original lien.

Mortgages—Liens—Priorities—Mining Lien.

4. Where, though a lien for mining supplies furnished was not filed until after a suit was instituted to foreclose a mortgage on the mining property, the supplies were furnished in part nearly a year before the execution of the mortgage, the lien was prior t othe mortgage.

From Jackson:  Hiero K. Hanna, Judge.

Statement by Mr. Justice Moore.

This is a controversy between the Grants Pass Banking & Trust Company, against the Enterprise Mining Company, and by the Condor Water & Power Company against the Enterprise Mining Company and the Grants Pass Banking & Trust Company, as to the validity and priority of a lien.   The facts as disclosed at the trial are as follows:

A suit was commenced March 12, 1907, by the Grants Pass Banking & Trust Company to foreclose a mortgage of certain mining property executed to it October 19, 1906, by the Enterprise Mining Company to secure the payment of $6,000.   The Condor Water & Power Company was made a party defendant; the complaint alleging that it claimed some interest in the premises inferior to plaintiff's mortgage.   That defendant, alone answering, denied that its claim was subordinate to that of the plaintiff, set forth facts tending to show that it had a prior lien on the real property, and thereupon commenced a suit against the Enterprise Mining Company and the Grants Pass Banking & Trust Company, averring that, pursuant to the terms of a written contract entered into

with the former, it had supplied between October 31, 1905, and March 1, 1907, certain material and furnished electricity for illumination and for the operation of a quartz mill on the premises amounting to $3,570.28, on account of which $1,527.20 had been paid, leaving due $2,043.08, to secure the payment of which a lien on the land, building, machinery, etc., was filed March 20, 1907. Issues having been joined the suits were consolidated and tried, resulting in a decree foreclosing the mortgage and the lien, but making the latter superior, and plaintiff appeals.                           AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. O. S. Blanchard* and *Mr. H. D. Norton.*

For respondent there was a brief and oral arguments by *Mr. Allen E. Reames* and *Mr. Robert G. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The statute giving a lien on mines, so far as involved herein, is as follows:

"Any person who shall furnish any provisions, materials or supplies for the working or development of any * * mine * * shall have a lien upon such mine * * to secure him the payment for the * * material furnished, which lien shall attach in every case to such mine." Section 7444, L. O. L. "The liens provided for in this act are preferred liens." Section 7447, L. O. L.

To uphold the decree rendered, electricity, when furnished at a mine for illumination or for power, must be construed to be a "supply," thereby bringing it within the designation of the enactment quoted. As applied to material objects, a supply is understood, in its restricted sense, to mean any substance that is consumed with its use. A supply, in its more general signification, is anything required or furnished to meet a need. 8 Words & Phrases, 6802. As used in the statute under consideration, "supplies" undoubtedly comprise any substance the

use of which might reasonably tend to the working or contribute to the development of a mine. Electricity, when employed to illumine a mine, enables laborers to work therein with almost the same success as in the daylight, thus materially contributing to the search for and the development of a mineral vein. The object of all mining operations is to secure valuable metals freed as much as practicable from all other substances. In quartz mining the crushing of rock containing mineral reduces the bulk by eliminating much of the superfluous matter, making it possible profitably to carry the resulting auriferous and argentiferous ores to market. By the use of suspended copper wires electricity can be transmitted from the place where it is generated to the mouth of a mine in almost inaccessible mountains and ravines, and there successfully used to operate quartz mills. Mines which a few years ago were almost worthless have, by the employment of electricity, become very valuable, affording profitable employment to laborers and yielding rich returns to the owners. Electricity is capable of propelling machinery and of illuminating mine and mill by continuous operation, and as this modern agent is consumed by its use, so far as susceptible of discernment, and supplies a very urgent need tending to the proper working and development of a mine, it is believed that such force is a supply within the scope of that term and for the use of which a lien may fairly be implied from the statute.

2. The Enterprise Mining Company stipulated in writing to pay the Condor Water & Power Company a minimum rate of $225 a month for electricity of a specified character and voltage with which to operate the mines and mill. It is asserted by plaintiff's counsel that the evidence fails to show a use of the specified amount of power or that any of it was employed in the mine. The testimony shows that electricity was furnished at the

mine of the quality and kind demanded by the terms of the contract, and, the supply having thus been delivered at the proper place, the burden of disproving the employment of the measure of the power was imposed on the Enterprise Mining Company, or on the plaintiff, who would succeed by the production of such proof: *Fitch* v. *Howitt*, 32 Or. 396, 409 (52 Pac. 192). No attempt, however, was thus made to defeat the lien.

3. It appears that prior to March 20, 1907, the Condor Water & Power Company undertook to secure a lien, but that its efforts in that direction were futile or unsatisfactory. The corrected lien was filed within the time limited therefor after furnishing the supplies, whereupon the preceding claims were abandoned. The right to file a proper lien continued until the expiration of the time allowed to file an original lien. Jones, Liens (2 ed.) § 1455.

4. The lien foreclosed was not filed until after plaintiff's suit was instituted, but, as the material was furnished in part nearly a year prior to the execution of the mortgage, the lien was properly decreed to be prior to the mortgage: *Henry* v. *Hand,* 36 Or. 492 (59 Pac. 330).

Other errors are assigned, but, deeming them unimportant, the decree is affirmed.          AFFIRMED.