[Civ. No. 1608.   Third Appellate District.—January 23, 1917.]

ASSOCIATED OIL COMPANY (a Corporation), Respondent, v. COMMARY–PETERSON COMPANY, INC. (a Corporation), et al., Appellants.

PUBLIC WORK — CONSTRUCTION OF HIGHWAY — GASOLINE FOR MOTIVE POWER—RECOVERY ON BOND.—Under the act of the legislature, approved March 27, 1897, requiring contractors on public work to file bonds to secure the payment of the claims of materialmen and laborers, a recovery may be had on such a bond for gasoline furnished to a subcontractor to create motive power with which to operate motor trucks to haul rock, sand, gravel, and cement in the construction of a state highway.

ID.—APPLICABILITY OF ACT—SUBCONTRACTORS.—Such act is not confined to the engagements of the contractor, but covers all labor and all material contributing to the improvement, whether furnished directly to the contractor or indirectly through a subcontractor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Samuel Knight, and F. E. Boland, for Appellants.

Edmund Tauszky, for Respondent.

BURNETT, J.—The facts are undisputed and we may adopt substantially respondent's statement of them.  About June 9, 1914, the Commary-Peterson Company, hereinafter referred to as the contractor, entered into a contract with the state of California for the construction of a portion of the state highway in Solano County.  In compliance with law, the contractor, as principal, and the defendant, New England Casualty Company, as surety, filed a bond with the department of engineering, the condition being that if the contractor shall pay or satisfactorily secure "the payment of all labor, materials, and supplies furnished for constructing under the said contract the said portion of said highway, as in said contract stipulated, and as required by the provisions of the act of the legislature of the state of California, approved March 27, 1897, entitled 'An Act to secure the payment of claims of

material men, mechanics or laborers employed by contractors on state, municipal or other public work,' and the acts amendatory thereof, then said bond shall have no effect, but that otherwise it shall remain in full force and virtue.''

On June 25, 1914, the contractor entered into an agreement with defendant, A. C. Thode, by which Thode agreed to haul all rock, sand, gravel, and cement required by the contractor from the places where the same were dumped to such places along the route of said highway as should be designated by the contractor. Between June 25, 1914, and May 25, 1915, Thode performed the work specified in said contract.

During the months of October and November, 1914, plaintiff, at the request of Thode, furnished to him 2,668 gallons of gasoline at twelve cents per gallon, to be used and which were actually used in the performance of the work contracted to be performed by the contractor. The specific finding of the court as to this is: ''That the gasoline furnished by plaintiff to defendant Thode was so furnished to be used and was actually used in operating and creating motive power with which to operate motor trucks used by said defendant Thode in hauling rock, sand, gravel, and cement used in the construction of said portion of said state highway, and that said hauling was done by said Thode pursuant to his said contract with said Commary-Peterson Company, Inc., and that said gasoline was so used in the performance of the work contracted to be performed by said Commary-Peterson Company, Inc., under said contract between said Commary-Peterson Company, Inc., and the state of California.''

Judgment by default was taken against defendant Thode and, after trial, the court found for plaintiff against the contractor and the surety and they have appealed from the judgment on the judgment-roll.

The provision of said statute of 1897 involved herein requires the contractor before entering upon the performance of his contract to file ''a good and sufficient bond . . . in a sum not less than one-half of the total amount payable by the terms of the contract; such bond . . . must provide that if the contractor, person, company, or corporation fails to pay for any materials or supplies furnished for the performance of the work contracted to be done, or for any work or labor done thereon of any kind, that the sureties will pay the same,

in an amount not exceeding the sum specified in the bond."
(Stats. 1897, p. 202.)

There is no dispute that the bond corresponded with said
provision and that no legal objection could be made to it in
any respect. There are, however, two grounds urged for a
reversal, one, that the gasoline does not fall within the cate-
gory of "supplies;" and the other, that the law does not apply
to material or labor furnished to a subcontractor.

There seems to us to be no substantial merit in either con-
tention. The use of the gasoline was inseparably connected
with the performance of the contract to haul gravel, cement,
etc. Without the motive power the trucks, of course, could
not have been propelled and the delivery of the material could
not have been effected. We can see nothing in the purpose
or language of the law inconsistent with the conclusion of the
learned trial judge that the gasoline was a material part of
the supplies.

As to the other objection, it is plain that the law is not con-
fined to the engagements of the contractor. It was manifestly
intended to cover all labor and all material contributing to the
improvement, whether furnished directly to the contractor or
indirectly through a subcontractor. The language of the act
and bond will not permit the construction put upon it by
appellant. Indeed, the contention, if sustained, would go far
toward defeating the beneficent purpose of the statute.

While there is no controlling decision in this state there is
abundant authority for the position taken by respondent, and
it may be well to call attention to some of the cases cited in
the brief.

The Minnesota case, it is true, arose under the mechanics'
lien law, but the provision construed therein was quite similar
to the language found in the statute before us. In *Johnson
v. Starrett,* 127 Minn. 138, [L. R. A. 1915B, 708, 149 N. W. 6],
the contract was for the excavation of a lot for the erection of
a church. The work was done with a portable steam-power
machine known as a whirly. The earth, as excavated and
lifted by the machine, was loaded upon motor trucks and
carried away. Johnson furnished Starrett coal used in gen-
erating the steam power for the whirly, and an oil company
sold the gasoline used in the motor trucks, both of these fuels
being sold to the contractors for the purpose stated and de-
livered on the premises. After the excavation was completed

the machine with its appurtenances was removed from the premises. As to the contention that the coal and gasoline did not furnish the basis for a lien the court declared: "Both the coal and gasoline were materials, and both were components of the resultant achievement. Had the excavation and removal of the earth been done by manual labor the right to a lien therefor would be undoubted, and we cannot differentiate such a case from where the same result is reached by other and modern methods."

An interesting case is *Zipp* v. *Fidelity & Deposit Co. of Maryland*, 73 App. Div. 20, [76 N. Y. Supp. 386]. There one Kriess entered into contracts with the city of Buffalo whereby he agreed to construct a restraining wall across a certain slip in said city. On behalf of Kriess said company executed its bond conditioned that if Kriess "shall well and truly perform all the labor and furnish all the material necessary to fully complete the work or improvements therein contemplated, and shall well and truly pay for all material used and services rendered in the execution of such contract, then this obligation shall be void." Two boilers and engines were used for excavating the rocks, sand, and earth and for pumping the water from the slip; the plaintiff, at the request of the contractor, furnished coal, which was used as fuel in the boilers to create power, and it was claimed by the surety company that this was not within the terms of its undertaking. The court said: "In the interpretation of a bond or contract of this kind it is to be construed in view of the work to be performed and the circumstances surrounding its execution, and by the same rules which govern in the construction of any other agreement. . . . The generation of power was essential in the performance of the contract, and when the defendant became responsible for the payment of 'all material used and services rendered in the execution of such contract' it might have expected that fuel was to be consumed in the undertaking. The coal used entered into the execution of the agreement and formed a part of the value of the work done as much as the labor of the masons or of the men who aided in hoisting the stones into position to make up the wall. The materials used need not be a permanent constituent of the structure itself, but must be necessarily incident to the execution of the agreement to come within the provisions of the

defendant's contract; and the coal consumed in carrying on the work is of that character.''

There is a federal statute, passed by Congress on August 13, 1894, similar to our law of 1897, and, in *United States* v. *American Surety Co.,* 200 U. S. 197, [50 L. Ed. 437, 26 Sup. Ct. Rep. 168], the supreme court of the United States entered into quite an extended exposition of the purpose and interpretation of said statute. It was declared: ''If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials *directly* to the contractor, for which he would be personally liable. But we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the public building shall be paid for and to provide a security to that end. Statutes are not to be so literally construed as to defeat the purpose of the legislature. . . . There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor *directly* to the contractor but *all* persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be *supplied* to the contractor in the prosecution of the work provided for. How supplied is not stated and could only be known as the work advanced and the labor and materials are furnished.

''If construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for owing to the default of subcontractors, and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated.''

In *City Trust Safe Deposit & Surety Co.* v. *United States,* 147 Fed. 155, [77 C. C. A. 397], one Bryant sold and delivered coal to the contractor which was used in the locomotives, hoisting engines and pumping engines employed by the contractor in carrying on the work provided for in a contract for constructing a drydock. The surety company contended that coal is not a material supplied and used in the performance of the

work within the meaning of the act of 1894; and the United States circuit court of appeals, after affirming the doctrine that the act of Congress and the bond given under it are susceptible of a more liberal construction than the lien statutes and should receive it, said: "But no especially liberal construction is required to bring the materials supplied in this case within the protection of the act. The labor expended by men in wheeling barrows of material from the point of receipt to the place where it is to be used; in working hand pumps to clear an excavation of water; in turning the cranks of a hoisting derrick, so as to raise materials to a proper elevation—all such labor is so manifestly labor in the prosecution of the work that no one could have the hardihood to contend that it is not within the express terms of the statute. If the contractor, whether for purposes of economy or of expedition elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which might produce it should not be equally within the protection of the law."

Under a statute similar to ours a contract was entered into for the construction of a public street improvement in the city of Seattle, state of Washington. One of the claimants furnished to the contractor coal for fuel for a steam-shovel used by him in excavating, which was a necessary part of the construction of the improvement, and the supreme court, in *National Surety Co.* v. *Bratnober Lumber Co.*, 67 Wash. 601, [122 Pac. 337], held that a commodity like coal consumed in generating power is included in the word, "supplies," saying: "It seems to us that the words 'provisions' and 'supplies' include anything that is furnished for, and used directly in the carrying on of, the work, and is entirely consumed thereby."

In the case of *Grants Pass Trust Co.* v. *Enterprise Mining Co.*, 58 Or. 174, [34 L. R. A. (N. S.) 395, 113 Pac. 859], the supreme court of Oregon held that electricity furnished for illumination and for the operation of a quartz-mill on certain mining property constituted "supplies" for the working or development of the mine.

Another case from the same state is *City of Portland* v. *New England Casualty Co.*, 78 Or. 195, [152 Pac. 253]. The

Oregon statute provides that contractors on public work shall give a bond conditioned that they shall promptly make payments to all persons supplying them "labor or materials for any prosecution of the work provided for in such contracts." A paving company obtained a contract for improving a street in the city of Portland and the appellant here became its surety. The paving company subcontracted the work of laying cement sidewalks; the subcontractor engaged a company called the Auto Truck Company to haul the cement from a certain warehouse to the place of work. This company hired one Swan to do the hauling in auto trucks owned and operated by him; neither the contractor nor subcontractor had any direct dealing with Swan. The subcontractor paid the Auto Truck Company, but the company failed to pay Swan and he instituted suit on the bond. The supreme court held that the Oregon statute "does not limit the right of recovery to those who furnish labor or materials directly to the contractor, but all who supply him with labor or material for any prosecution of the work provided for in the contract are to be protected." It was further declared that "Truckmen transporting material for a short distance in order to prosecute the work under the contract accelerate the construction just as effectively as the · man who mixes the concrete on the ground. . . . It is not important whether he conveys the cement in an auto truck or on his back. Such labor comes within the meaning of the words 'supplying labor or materials for any construction of the work.' It is directly connected with the work of construction and is essential thereto, and a person who performs it is entitled to bring an action on the bond for his benefit."

Appellants cite certain decisions from this state under the mechanics' lien law, claiming that "While this action is not to foreclose a lien and the special statute is the measure of the rights and liabilities of the parties, yet the end sought is the same and cases prosecuted under one statute are very persuasive in those under the other, particularly where similar language is employed." These cases are reviewed by respondent, and it is shown that nothing contained therein is necessarily inconsistent with the conclusion of the lower court herein. Attention is also called to the fact that these cases were decided prior to the amendment of the mechanics' lien law in 1911 enlarging its scope and, in effect, giving a lien "to teamsters and draymen and all persons and laborers of every class

performing labor upon or bestowing skill or other necessary services, or furnishing materials to be used or consumed in, or furnishing appliances, teams and power contributing to the construction,'' and it can hardly be disputed that if the work here had been of a private instead of a public character, and the action were to enforce a lien, the said amended statute is broad enough to cover the supplies furnished in this case.

However, it was held, in *French* v. *Powell,* 135 Cal. 636, [68 Pac. 92], that the statute under consideration ''is entirely distinct from and independent of the general mechanics' lien law.'' Therein, in answer to the contention that the services of Clapham as a blacksmith were not lienable, it was said: ''We do not regard the claim of Clapham as similar to a claim of lien under the mechanics' lien law. The bond and the contract with the city are the source of the obligation, and the obligors agreed to pay for 'any work of any kind' done on the tunnel. Clapham furnished the labor, and it was labor such as the contract called for, and he filed the claim in his own name.''

We may say in conclusion that as to the contingency of a default in payment on the part of a subcontractor, or the possibility of a duplication of payments the contractor can, of course, protect himself by requiring a bond of the subcontractor or exacting the necessary receipts before making his settlement.

We perceive no reason for disturbing the judgment and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 23, 1917.