Argued February 14, affirmed March 6, 1917.

# COLUMBIA COUNTY v. CONSOLIDATED CONTRACT COMPANY.

(163 Pac. 438.)

**Jury—Disqualification—Taxpayer—County as Nominal Party.**

1. Under Section 575, L. O. L., relative to costs in suit by one person in the right of another, in an action by a county, for the use and benefit of an employee on highway work, against the contractor for such work and the surety on its bond, in the absence of bad faith, costs should not be awarded against the county, a nominal party, but, in the event of defeat, against the real party in interest, and such condition did not disqualify taxpayers of the county as jurors.

**Appeal and Error—Review—Presumptions—Overruling Motion for Change of Venue.**

2. Where defendants asked for a change of venue, and the defendants' supporting affidavit was opposed by counter-affidavits on behalf of plaintiff, but such affidavits are not contained in the bill of exceptions, the Supreme Court cannot review the ruling of the trial court on the motion, as it must be assumed that it exercised its discretion properly in overruling the motion, and its action will not be disturbed, unless an abuse of the discretion is clearly shown.

**Highways—Contracts—Bond—Liability to Materialmen—Statute.**

3. That labor and materials were supplied to the contractor with a county for highway work not directly, but through a subcontractor, does not permit the contractor to escape liability therefor, under Section 6266, L. O. L., as amended by Laws of 1913, page 59, relative to bonds by contractors on public works, and under its contract and bond, requiring that it pay all laborers, mechanics, subcontractors and materialmen, and all persons who should supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on the work, since the bond of the contractor inures to the benefit of laborers working for a subcontractor.

**Highways—Contracts—Bond—Liability to Materialmen—Statute.**

4. Material, supplies, labor furnished for incidental repairs on machinery used by a contractor on highway work for a county, and blacksmith's services were covered by both. Section 6266, L. O. L., as amended by Laws of 1913, page 59, relative to bonds by contractors on public works, and by the contractor's bond, providing that the contractor pay all laborers, mechanics, subcontractors, materialmen and all persons who should supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on the work.

**Counties—Contract for Public Work—Power to Require Bond.**

5. Public corporations, such as a county, though not expressly authorized by enactment, have the power to require bond from contractors for public work to pay for all labor and materials furnished in the performance of such work.

Highways—Contracts—Bond—Assignment of Claims—Statute.

6. Under Section 6266, L. O. L., as amended by Laws of 1913, page 59, relative to bonds by contractors on public works, where a subcontractor on highway work for a county employed teamsters, who, before filing of an affidavit to procure a copy of the contract for the work and the contractor's bond, assigned their claims to one of them, the latter's right to enforce such claims against the contractor and its surety was not precluded; the filing of an affidavit by the claimant not being jurisdictional or a condition precedent, and the claims of laborers and materialmen being assignable.

Highways—Contracts—Bond—Right of Action of Materialman.

7. The right of action, under Section 6266, L. O. L., as amended by Laws of 1913, page 59, against the contractor and the surety on its bond, of one furnishing labor and material to a subcontractor for the prosecution of highway work for a county, cannot be defeated by any act of the county officials, such as a change in the contract plan of work, or breach of the contract, or by any act of the contractor's.

> [As to right of one furnishing labor or material to sue on bond given by contractor to property owner, see note in Ann. Cas. 1916A, 754.]

Trial—Instructions—Repetition.

8. The refusal of an instruction given in substance in the court's charge was not erroneous.

Principal and Agent—Estoppel to Deny Agency—Retention of Benefits.

9. The contractor for highway work with a county, and the surety on its bond could not obtain and retain a release from employees of a subcontractor, and insist upon the benefits that might result therefrom, at the same time repudiating the acts and authority of the agents in obtaining the release.

Counties—Contractor's Bond—Construction.

10. The rule of *strictissimi juris* does not apply to a surety company on a contractor's bond, given under Section 6266, L. O. L., as amended by Laws of 1913, page 59, and the bond must be construed most strongly in behalf of the indemnity, which the obligee has good reason to expect, the surety company being bound by the recitals in the bond which it executed for a compensation.

From Columbia: James A. Eakin, Judge.

This is an action by Columbia County, a municipal corporation, for the use and benefit of O. B. Bennett, against the Consolidated Contract Company, a corporation, and the New England Casualty Company, a corporation, in which the plaintiff obtained judgment and defendants appeal.    Affirmed.

Department 2.   Statement by MR. JUSTICE BEAN.

On March 8, 1914, the Consolidated Contract Company, hereinafter called the Contract Company, entered into a written contract with Columbia County, Oregon, to be designated as the county, to construct that portion of the Columbia Highway therein between Tide Creek and the east line of Clatsop County. The contract provided that the Contract Company should promptly make payments for labor and materials supplied for the prosecution of the work when they became due. On May 11, 1914, the defendant Contract Company, as principal, and the New England Casualty Company, as surety, gave a bond for $140,000 to assure the faithful performance by the contractor of the terms and conditions of the contract, a copy of which was made a part of the bond. The bond provided especially that the contractor .

"shall pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work."

The contract was executed pursuant to a bid made by the Contract Company in writing. In accordance with the requirements for making such proposal the Contract Company deposited its certified checks payable to the order of the County for $15,000, upon the condition required by the latter, that if the bid should be accepted and the bidder failed to enter into the contract mentioned in the proposal or to give within the required time a bond as security for the performance of the contract in the sum of one half the contract amount with satisfactory surety the County·Court at its option might determine that the bidder had aban-

doned the contract and that the $15,000 should be forfeited to the county.

It is pleaded and contended by the defendants that the conditions of the bond required by the county, as set forth above, were in excess of the requirements of the statute and the contract; that on account of the deposit, in order to prevent its forfeiture, the Contract Company was thereby coerced and compelled to accede to the above demand; and that the defendants by reason thereof, and not otherwise, executed the bond.

On May 21, 1914, the Contract Company entered into a written contract with one John Marandas, whereby a portion of the work near Clatskanie was sublet. He thereafter employed Bennett and his assignors as teamsters and they performed labor in the actual construction of that part of the highway.

This action was brought by O. B. Bennett upon the bond given pursuant to Section 6266, L. O. L., as amended in 1913, in the name of Columbia County to recover from defendants the amount due on his original claim and that of ten others assigned to him. At the trial a voluntary nonsuit was taken on two of these claims embraced in the sixth and eleventh causes of action. On each of the remaining causes of action after the formal averments the following is alleged in substance: (1) The making of the contract; (2) the execution and delivery of the bond; (3) the provision in the bond for the payment of laborers and materialmen above set out; (4) the making of the subcontract of the Contract Company with Marandas; (5) the employment of the claimant, the performance of his services on such work, and the sum due him therefor; (6) the application for and the obtainment of a certified copy and the bond; and (7) the assign-

ment of claims of the claimants other than his own
to plaintiff Bennett.

The defendant filed separate answers and set up
as defenses: (1) An agreement of Marandas to pay
for the labor and material used in the work under his
subcontract; (2) an agreement of these labor claim-
ants to release the Contract Company from payment
for their services; (3) that the defendants were
coerced by the officers of Columbia County into giv-
ing the bond; (4) that the latter committed breaches
of the contract specifically mentioned; and (5) that
under the statute the labor claims were not assignable.
The defendant New England Casualty Company fur-
ther set up as a defense that by the general stipulations
attached to the contract of May 8, 1914, it is provided
that "the contractor shall give his personal attention
to the faithful prosecution of the work and shall not
sublet without the written consent of the state high-
way engineer for each individual subcontractor"; and
that the state highway engineer did not consent in
writing to Marandas' subcontract. Plaintiff filed
replies putting in issue the material averments of the
answers, but admitting that the work was done under
the direction of Marandas; that the Casualty Com-
pany permitted him to proceed therewith; and that
the signing of the writing alleged as a release was
obtained from claimants without any consideration,
through fraud, misrepresentations, threats, duress and
coercion perpetrated upon each of them by the Con-
tract Company, specifying the particulars and plead-
ing an estoppel of defendants to claim, assert or con-
tend that they are not bound by the conditions of
their bond.

After the cause was at issue in Columbia County
the defendants moved for a change of venue to another

county upon the ground that Columbia County is a party to the action and that no taxpayer therein is qualified to sit as a juror. They set up by affidavit that the inhabitants of that county were so prejudiced against them that they could not expect an impartial trial there. The cause was tried before the court and a jury resulting in a judgment in favor of the plaintiff for $1,280.96. The defendants filed a demurrer to the plaintiff's complaint as insufficient which was overruled. At the close of plaintiff's case in chief and after all the testimony had been given the defendants moved for a directed verdict in favor of plaintiff for $5 on the first cause of action and in favor of defendants on the other causes of action. At the proper time they also moved for a nonsuit on each cause of action except the first. These several motions were denied. Defendants appeal.                AFFIRMED.

For appellants there was a brief over the names of *Mr. John H. Hall, Mr. Jesse Stearns* and *Mr. Charles E. McCulloch,* with an oral argument by *Mr. Hall.*

For respondent there was a brief and an oral argument by *Mr. William H. Powell.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The first assignment of error urged by counsel for defendants upon this appeal is the refusal of the trial court to grant a change of venue. The first ground for the motion for such change is that the county is a party to the action and particularly that in the event the defendants were successful it would be liable for costs. The county is a nominal party only and has no real interest in the case but is the trustee for the real party in interest. In such an instance, in the absence of bad faith, costs should not

be awarded against a nominal party, but, in the event of defeat, against the real party in interest: Section 575, L. O. L. As somewhat analogous, see *Teed* v. *Marvin,* 41 Mich. 216 (2 N. W. 20); *Sand* v. *Church,* 52 N. Y. Supp. 854 (32 App. Div. 139); *Nelligan* v. *Groth,* 110 N. Y. Supp. 619 (126 App. Div. 444). Such a condition would not disqualify a taxpayer of the county as a juror.

2. The second ground was prejudice of the inhabitants of that county against the defendants. This was supported by an affidavit on the part of the defendants and opposed by counter-affidavits on behalf of the plaintiff. These affidavits are not contained in the bill of exceptions, therefore we cannot review the ruling of the trial court in this respect. It must be assumed that it exercised its discretion properly in overruling such motion, and its action will not be disturbed unless an abuse of the discretion is clearly shown: *State* v. *Humphreys,* 43 Or. 44 (70 Pac. 824); *State* v. *Armstrong,* 43 Or. 207 (73 Pac. 1022).

The demurrer and the several motions interposed by the defendants were based largely upon the fact that the action was upon a bond not in conformity with that prescribed by the statute of this state, and were relying for recovery upon the provisions inserted which are not contained in the statutory bond. The questions relating thereto may be considered together.

3. The gist of Section 6266, L. O. L., as amended by Laws of 1913, page 59, was taken from the act of Congress of August 13, 1894. 28 Stat., p. 278, c. 280 (U. S. Comp. Stats. 1913, § 6923). The requirement that the bond shall contain a clause "that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for the prosecution of the work provided for

in such contracts," is identically the same in each statute. It is contended that the following words were improperly inserted in the bond in suit, namely, "pay all laborers, mechanics, subcontractors and material-men, and all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work." In so far as the present case is affected the requirement of the bond to "pay all laborers, mechanics, subcontractors and materialmen" is applicable, and is no broader than the intent and scope of the statute. The several claims made are for labor and material supplied and used in the prosecution of the work provided for in the contract. That such labor and material were supplied to the contractor not directly but through a subcontractor does not permit the Contract Company to escape liability therefor under the provisions of the statute and its contract and bond. The contractor received the benefit of services and material in the enhancement of the undertaking: *Portland* v. *New England Casualty Co.,* 78 Or. 195 (152 Pac. 253); *Hill* v. *American Surety Co.,* 200 U. S. 204 (70 L. Ed. 437, 26 Sup. Ct. Rep. 170). In the latter case Mr. Justice DAY said:

"The language could hardly be plainer to evidence the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work. There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or materials is not indicated or circumscribed. It is only required to be 'supplied' to the contractor in the prosecution of the work provided for. How supplied is not stated,

and could only be known as the work advanced and the labor and material are furnished.''

In other words, the bond inures to the benefit of laborers working for a subcontractor: *United States Use of Marble Co.* v. *Burgdorf,* 13 App. D. C. 506; *Water Co.* v. *Ware,* 16 Wall. 566 (21 L. Ed. 485).

4. Material, supplies and labor furnished for incidental repairs on machinery used in the work, and a blacksmith's services, are covered by both the statute and bond: *French* v. *Powell,* 135 Cal. 636 (68 Pac. 92); *Baker City M. Co.* v. *Idaho Cement Pipe Co.,* 67 Or. 372, 379 (136 Pac. 23); *Grants Pass Trust Co.* v. *Enterprise Mining Co.,* 58 Or. 174, 177 (113 Pac. 859, 34 L. R. A. (N. S.) 395). There was no error in overruling the demurrer and denying the motions. The words showing the liability of the defendant Contract Company for the claims in suit were properly inserted in the contract and bond, and the company had no good reason to object to the bond on that account. The insertion of such clause in the written obligation and the requirement of the county officials that sufficient security for the fulfillment thereof be given by the Contract Company furnished no pretext upon which to base duress or coercion in the execution of the bond.

5. It is unnecessary to demand exact nicety in conforming such a bond to the phraseology of the statute as by the great weight of authority public corporations, although not expressly authorized by enactment, have the power to require a bond from contractors for public work, to pay for all labor and materials furnished in the performance of such work: See note to *Denver* v. *Hindry,* 11 L. R. A. (N. S.) 1028; note to *Nat. Surety Co.* v. *Hall-Miller Decorating Co.,* 46 L. R. A. (N. S.) 326; *United States Gypsum Co.* v.

*Gleason,* 17 L. R. A. (N. S.) 908 (135 Wis. 539, 116 N. W. 238) ; *Hamilton* v. *Gambell,* 31 Or. 328, 331, 335 (48 Pac. 433). The statute should be liberally construed to effectuate its purpose. The defendants executed the bond with knowledge of the legislative intent, and as the purpose was not immoral or illegal, they cannot now be heard to deny their liability voluntarily assumed by the execution of the written obligation: *United States to Use Standard Furniture Co.* v. *Henningsen,* 40 Wash. 87 (82 Pac. 172, 173) ; *City of Philadelphia to Use of Webster* v. *Nichols Co.,* 214 Pa. 265 (63 Atl. 888) ; *Board of Education* v. *Grant,* 107 Mich. 151 (64 N. W. 1050).

6. It is contended on behalf of defendants that the assignment of eight of the claims to O. B. Bennett, before the filing of an affidavit for the purpose of procuring a copy of the contract and bond, precludes the right to enforce such claims against defendants; that the reasoning in regard to acquiring the right of action in such cases is analogous to that in relation to perfecting a mechanic's lien. The same rules of construction do not apply to the statute and bond under consideration as govern the mechanic's lien statutes of the various states. Section 6266 of our Code makes no requirement that the claimant, as a condition precedent to the perfection of his right, file within a certain time a prescribed statement with a designated officer as required by the mechanics' lien statutes. The rulings of the federal courts in this regard are instructive on this point. In *Title G. & T. Co.* v. *Puget Sound Engine Works,* 163 Fed. 168, 178 (89 C. C. A. 618), it was held that the making of an affidavit for the obtainment of a copy of the contract and bond was not a jurisdictional matter. In *Title G.*

*& T. Co.* v. *Crane & Co.,* 219 U. S. 34 (55 L. Ed. 72, 31 Sup. Ct. Rep. 142), Mr. Justice HOLMES said:

"The language of the statute that after giving the affidavit the party should be furnished with a certified copy of the contract and bond, 'upon which he or they shall have a right of action,' etc., may be read as meaning 'upon which bond' as easily as 'upon doing which,' and hardly can be construed as making a condition precedent. The conditions are attached in the form of provisos by later words."

Upon this authority we hold that the filing of an affidavit by the claimant is not jurisdictional or a condition precedent. It is for the purpose of enabling the claimant to obtain an authentic copy of the contract and bond upon which to sue. In the case in hand there was no necessity for each of the several claimants to obtain such a copy. One set was sufficient for all. The statute confers upon one who has performed work or furnished material in the prosecution of such a public work the right of action. Filing an affidavit and obtaining copies of the instruments is a mere procedure preliminary to enforcing the right. The claims of such laborers and materialmen are assignable. The assignment carries the security and all rights of the assignor: *United States to Use of Fidelity Nat. Bank* v. *Rundle,* 100 Fed. 400, 403 (40 C. C. A. 450); *Sepp* v. *McCann,* 47 Minn. 364 (50 N. W. 246).

7. Defendants offered evidence tending to show that changes were made in the plan of the work from which it is claimed that the county breached the contract and thereby released the surety from liability on the bond. The court excluded this evidence and defendants urge that such ruling is erroneous. This bond was given for the protection of laborers and materialmen as well as for the county. The right of action

of one furnishing labor or material for the prosecution of the work cannot be defeated by any act of the county officials, such as a change in the contract plan of work or breach of the contract, or by any act of the contractor: *Conn* v. *State,* 125 Ind. 514 (25 N. E. 443); *Bell* v. *Kirkland,* 102 Minn. 243 (113 N. W. 271, 120 Am. St. Rep. 621, 13 L. R. A. (N. S.) 793); *American Surety Co.* v. *Lauber,* 22 Ind. App. 326 (53 N. E. 793). In *Conn* v. *State,* it was said:

"To permit the contractor and the board of commissioners, by any act of theirs, without the consent of such laborers or materialmen, to destroy such security would be the grossest injustice. To permit them to do so would be to permit them to set at naught the plain intention of the legislature as expressed in the statute."

There was no error committed in rejecting the proffered evidence.

On September 16, 1914, some of the claimants who were employees of Marandas, in order to carry out an agreement between the Contract Company and Marandas signed a release and agreement to the purport that after that date they would look solely to him for pay for their labor, and release the Contract Company therefrom. It is alleged that this release was without consideration and fraudulently obtained. It appears that Mr. Dooney, foreman of John Marandas, procured some of the signatures to the release. Mr. Merritt, timekeeper for both Marandas and for the Contract Company at different camps, and the representative of the latter upon the works, obtained some of the signatures of the laborers. On this point plaintiff testified as follows:

"Q. Was anything said to you in any of these conversations, Mr. Bennett, in reference to this bond that

Marandas had given the Consolidated Contract Company?"

The witness answered:

"A. Mr. Johnson assured me that I would not lessen the security that I had for payment by the mode of procedure that they expected to carry out with Marandas; that I would not only have their security that I already had but that the Marandas bond they felt would be more available and I would have that in excess of the securities that I had at the present time, working for Marandas, which seemed to me as reasonable.

"Q. Was there anything said to you by Mr. Johnson or Titus or Marandas in any of these conversations preceding the attaching of your signature to that paper in regard to the ability and willingness of Marandas to promptly pay the claim?

"A. In my conversation with Mr. Titus preceding this signature, this matter was under discussion from time to time, a week before with me, on several occasions in a conversation with Mr. Titus, when Mr. Marandas was present, as I recall it, Mr. Titus assured me that under any circumstances, Mr. Marandas was fully able to pay all of the work, and as a precaution, he assured me that he had gone with Mr. Marandas to some bank in Portland—I cannot mention the name of the bank—and that Mr. Marandas could borrow there a thousand dollars at any time that he might want if it became necessary for him to use that money.

"Q. Was there anything said as to whether or not the signing of this instrument would lessen the security that you had for the payment of your services?

"A. I think I have already testified that the matter was discussed and that my security would be increased rather than decreased by the proposed change in the method of operation."

Frank Burnham, who was called on behalf of plaintiff, testified in part as follows:

"Q. Now, you may state Mr. Burnham, as near as you can remember, what conversation was had by

Merritt and you at the time of the presentation of that paper.

"A. He came there on the road and presented the paper to me and asked me to sign it, and I objected to signing it and he stated that it would in no way make any difference in regard to the pay, that we were protected in regard to the pay for the road, for the work that we performed; he stated there was a bond up sufficient to cover any amount of work that we should perform there; that we would be sure and be paid.

"Q. Did he say anything in reference to whether the county or state were also liable to pay for your services?

"A. Well, he stated that any work done on the highway that the state or county was liable for the work done—that we were sure to get our money."

Apparently the jury found that the signatures to the release were obtained by misrepresentation and fraud.

Counsel for the defendants requested the court to instruct the jury thus:

"If you should believe from the testimony that either Mr. Merritt or Mr. Thomas Dooney made any false representations or promises to plaintiff or to the other signers of the agreement marked defendants' exhibit 4 in order to obtain their signatures thereto, and in so doing they were acting for John Marandas and not for the Consolidated Contract Company, in that event, plaintiff cannot recover in this action, and your verdict should be for defendants."

They also requested the court to charge in effect that:

"Parties are only bound by their own acts and the acts of their agents and servants while acting within the scope of their authority, and are not bound by acts of agents while acting outside of the scope of their authority."

These requests were refused and error is predicated thereon.

In regard to the question of consideration for the release, over the objections of the defendants' counsel the court charged the jury:

"A consideration, such as would support a contract like this one, would be an act or promise by which some right, interest, profit or benefit accrues to one party or by which some forbearance, detriment, loss or responsibility is given, suffered or undertaken by the other, and in return for which the party who receives the benefit or for whom the detriment is suffered promises or conveys something to the other, whether the person receiving the consideration derives any benefit from it, or whether it is an adequate consideration is immaterial, if there is in fact a consideration. * * In respect to the consideration, I instruct you that, standing alone, a continuation of the same employment or services at the same compensation, when no definite term is agreed upon by and between the employer or obligor and the employee, is no consideration. That is to say, if there was actually no change of conditions brought about by the new arrangement to the advantage of the promisor or to the detriment of the promisee, there would be no consideration passing and so that, standing alone, the continuation of the same employment or service at the same compensation without any change in the term of employment between the employer or obligor and the employee, is no consideration. Such of the signers as were at the time of signing this writing already employed in the work, who received no increase of compensation, no agreement for work to a time certain, or other things of value for the making of the writing, would not be receiving a consideration of value to them and are not bound by the alleged release, unless you should find some other consideration upon which it is based."

The following instruction was excepted to by the defendants:

"If the alleged release was obtained by fraud or misrepresentation, it has no validity; therefore, if you believe and find from the preponderance of the evidence that the Consolidated Contract Co., through any of its officers or agents induced any of the signers of the writing to sign by representation that it had a bond from Marandas which would secure or insure the prompt payment of their claim, that under its contract their claims were secured by the State of Oregon or Columbia County, or that the writing was only a form designed to keep the work on the highway going and would in no way deprive them of the security they had for their pay, or that Marandas was abundantly able and willing to pay them promptly, and you further believe and find that such representations were false and that they were known to be false by the defendant Consolidated Contract Company or its agents making them, that such representations were made with the intent that they should be acted upon by the persons to whom they were made, that they were not known to be false and were relied upon by the persons signing such release and were the inducement for such signing, then you should find that such writing is void and not binding upon the parties thereto.

"If false representations are made by the agent and advantage accrues therefrom to the principal, the principal cannot at the same time repudiate the act of the agent as unauthorized and at the same time retain the benefits of the transaction. Before he can repudiate or disallow the unauthorized act of the agent, he must first restore the person from whom the benefit was received to the condition he was in before the transaction."

We see no error in the charge given to the jury by the learned trial judge.

8. The first requested instruction, the refusal of which is complained of, was given in substance in the charge to the jury. The next requested instruction was properly refused and the law in regard to agency was properly explained to the jury by the trial court.

9. The defendants cannot obtain and retain the release and insist upon the benefits that might result to them therefrom and at the same time repudiate the acts and authority of the agents in obtaining the same: *McLeod* v. *Despain,* 49 Or. 536, 563 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276); *Hillyard* v. *Hewitt,* 61 Or. 58, 62 (120 Pac. 750); *Grover* v. *Hawthorne,* 62 Or. 96 (114 Pac. 472, 121 Pac. 808). Moreover, the proper procedure for the Contract Company would have been for it to have required Marandas to have indemnified it from loss by reason of a failure to perform his subcontract. This would have worked no hardship. The statute requires the officers of the state, or of any county, municipality, or school district, when a formal contract is awarded for any public work, to exact a bond for the protection of those furnishing labor and material therefor. A failure to require such bond to be so executed subjects the state, county, municipality or school district entering into the contract and the officers authorizing it to a joint liability for any labor or material furnished the contractor for which he fails to pay. Such bond is not required as a matter of form. Sound public policy and a complete fulfillment of the law demand that such a bond shall be kept intact. The obtainment of signatures of laborers and materialmen to releases from liability upon such an obligation by a "contractor" should not be a mere evasion of the statute, and should be carefully scrutinized in order that no fraud may be perpetrated upon the public. The provisions of the enactment are salutary and should be carried out, and not evaded. The provision in regard to the liability of the state, or an arm thereof, and the officials authorizing a contract for public work are stringent. No good reason exists

why a fair compliance with the law should not be made by those who are favored by an award of contracts for public works. The instructions given to the jury taken as a whole were more favorable to the defendants than they could reasonably expect.

10. The rule of *strictissimi juris* does not apply to the defendant surety company in this case, and the bond must be construed most strongly in favor of the indemnity which the obligee has good reason to expect. The surety company should be bound by the recitals in the bond which it has executed for a compensation: *United States for Use of Hill* v. *American Surety Co., supra; Northern Pacific Ry. Co.* v. *Fidelity & Deposit Co.*, 74 Wash. 543 (134 Pac. 498–500); 32 Cyc. 307; note to Ann. Cas. 1912B, 1087.

Finding no error in the record the judgment of the lower court is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE BURNETT concur.