Kinkead, J.
(sitting by designation of Chief Justice.)
This action was brought to restrain defendants from discontinuing the performance of a contract, and from failing and refusing to pump water for plaintiff, and for mandatory and perpetual injunction requiring defendants to specifically perform the terms of the contract. General Code, Section 4312.
Defendant Wurdack owns and operates the Millersburg Electric Light plant which furnishes electric light and current for the village and citizens thereof.
Plaintiff alleges that it made a written contract with the Citizens Light & Power Company on September 9, 1914, to pump *50 and promptly furnish, a continuous supply of water for the village and citizens thereof from wells owned by the village to its reservoir for a period of ten years. The consideration was $2,400 per annum, payable in equal monthly installments.
Provision was made that if additional hydrants should be placed in service, the same was to be paid for by plaintiff proportionately to the number of years. If the water supply should be decreased, then the price was to be proportionately decreased.
The village was to furnish and place all hydrants, taps, mains and pipes and to keep them in repair! It was to furnish all pumps, motors, transformers and other equipment necessary to perform the service under the contract, the company being required to keep the pumping station and premises in repair, natural wear and tear excepted.
The compensation paid the company for pumping was to be in lieu of and take the place of all expenditures which the board of trustees of public affairs might make for persons employed, or for fuel and other incidental running expenses.
The petition avers that through “mistake or inadvertence of the scrivener of said contract, or through the mutual mistake of both parties the same was executed in the name of the board of public service, in place of the name, of the board of trustees of public affairs, etc. ’ ’
As a matter of fact, however, the contract was signed by the acting and qualified president of the then existing board of trustees of public affairs, and was duly approved and confirmed by the members of such board.
The parties have continuously acted upon such contract, and fully performed its terms since it was made.
The cause of the complaint is that defendant gave notice to plaintiff that it would discontinue performance of the contract on March 16,1919.
Plaintiff relying upon the contract, alleges it made no provision for the emergency of such discontinuance; it alleges that it has made contracts with various persons and corporations to furnish large quantities of water daily for customers and consumers, and that it has no other means of guarding against fires, etc.
*51 The defense is that on September 9, 1914, the Citizens-Light & Power Company signed a certain instrument containing among other provisions the matters set forth in the petition, but claims that the same was and is null and void, and imposed no obligation upon the company, and that the answering defendant is not bound by its provisions; that the instrument is wholly void.
In reply plaintiff pleads estoppel; it is alleged that the. light company and defendant trustee have operated under such contract; that the light company induced plaintiff to enter into the contract; that it declared and represented that unless the village of Millersburg entered into the contract it would be deprived of electric current during the hours of daylight.
The electric company presented monthly bills which were paid. Furthermore claim is made that the contract was written and prepared by the electric light company and presented by it to plaintiff and duly executed by both parties.
Therefore, it is claimed that defendant is estopped from asserting the invalidity of the contract.
The contention of illegality is made under Section 4328. This provision provides that the director of public service may make contracts or purchases for supplies or material, or provide labor for any work under the supervision of that department not involving more than $500. If an expenditure within the department — other than compensation of persons employed — exceeds $500, such expenditure must first be authorized and directed by ordinance of Council. In such case it is imperative that the director of public service make-a written contract with the lowest and best bidder after advertisement, etc.
This provision has application to municipalities having directors of public service; it has relation to expenditures for supplies or labor for any work under the supervision of that department;'it has no reference to compensation of persons employed in the department.
There is no director of public service for villages; Sections 4356 to 4362 create the board of trustees of public affairs for villages.
Section 4361 confers upon the board of trustees of public -affairs all the powers requiring it to perform all the duties re *52 quired to be exercised and performed by the trustees of water works.
Section 4361 was amended May 9,1913 (103 O. L., 561). This amendment provided that:
“The board of trustees of public affairs shall manage, conduct and control the water works, etc. * * * Furnish supplies of water * * # appoint officers, employes and agents. * * * The board of trustees of public affairs shall have the same powers and perform the same duties as are possessed by, and are incumbent upon, the director of public service as provided in Sections 3955 and 4328 of the General Code, etc.”
It is clear Section 4328 of the General Code is applicable to boards of trustees of public affairs in villages; that contracts for supplies, material or provision for labor for any work under the supervision of that department not involving more than five hundred dollars, can not be made except in the manner therein provided. ^
Contracts for the purchase of supplies or material in excess of $500 can be made only upon authority of council after advertisement and receipt of bids.
The board of trustees of public affairs for villages may “provide labor for any work under the supervision of that department not in excess of $500| without an ordinance, advertisement or bids.
What does “provide labor for any work” mean? Does it have application to a contract with an electric company to furnish power to operate the pumps of municipal water works? The electric company undertook the work of pumping water for a period of ten years at $20|0 per month or $2,400 for one year, for a total period of ten years.
The language of the contract is that the company “agrees to properly pump and properly furnish the continuous supply of water at and from the wells of the village. ’ ’ The company agreed “to furnish place and maintain all pumps, motors, transformers and all other equipment necessary to perform properly the service under the contract.”
*53 It was contemplated that the company was to furnish “supplies or material.” Defendants were to supply all pumps, motors, transformers, and all other necessary equipment to do the pumping. Is electricity or the power generated thereby and transmitted by the essential equipment to be regarded as supplies ?
The logical conception is that the electric company undertook to furnish and sell all the electricity or power and the means of transmission thereof essential to do the work of pumping the water for plaintiff.
What the electric company contracted to do took the place of the coal and the engineer the means by which the work of pumping had formerly heen done by the village.
That which the eletcrie company agreed to furnish, to-wit, electric power and the necessary “supplies or material” for transmission thereof, bears no analogy to the exception of Section 4328, viz.: “the compensation of persons employed therein.” Furnishing electricity at $200 per month is not compensation of persons employed, but is purchasing electric power as supplies at $200 per month.
All users of electricity buy and pay for so many watts or units of power consumed by them; it is analogous to so many tons of coal used to operate the pumps.
In this ease the electric company agreed to furnish such number of watts of power as were essential to do the work of pumping the water for plaintiff at the rate of $200 per month or $2,-400 per year.
It is held that electricity furnished to illuminate a mine constitutes “materials or supplies” under a statute providing for a lien for furnishing the same. A supply means any substance consumed; in its more generic sense it means anything furnished to meet a need; the term “supplies” as used in the statute, includes any substance the use of which reasonably tends to the work or operation of a mine. Grant’s Pass Trust Co. v. Enterprise Mine Co., 113 Pac., 859, 34 L. R. A. N. S., 395.
“ ‘Supplies’ is frequently used in statutes relating to liens, and as used in reference to a city or its inhabitants.” Gleason v. Dalton, 51 N. Y. Supp., 337, 338, 28 App. Div., 35, 555.
*54 The contract was not executed in conformity to law. The material or fatal irregularity is the lack of a municipal ordinance authorizing the board of public affairs to enter into the contract. It is sufficient for purposes of this decision to hold that an ordinance was essential; this authority was necessary; in the absence of an ordinance the board of trustees had no authority to make the contract for the reason that the expenditure to be made exceeded the statutory limit. The informality in the name of the official authority is not of official consequence. Nor is it essential to decide that failure to advertise and receive bids invalidated the contract. The authorities cited on this proposition tend to support the contention that advertisement and receipt of bids may not be essential where conditions are such that there might not be competitive bids; where there is a monopoly or but one company.
In City v. Electric Co., 65 Conn., 324 (1895), it was held that the fact that the contracts were not advertised according to a city ordinance, requiring all contracts for city work exceeding in amount $500, and the contract awarded to the lowest bidder could not be held void when it appeared that the electric light company was the only company which could without delay furnish electricity to the city. This was a contract for lighting the street lights.
The lighting of public buildings and streets with gas under an act requiring contracts for supplies to be made on advertisement for sealed proposals was held not to be within such act, where the company had a practical legislative monopoly. Harlem Gas Light Co., v. City, 33 N. Y., 309 (1865).
It was stated in Baird v. City, 96 N. Y., 566, 582, 1884, that—
“it has been frequenaly held that provisions of law requiring contracts on behalf of a municipal corporation to be let to the lowest bidder may not be obligatory upon its officers on account of their inherent inapplicability to the nature and circumstances of the ease. If an article can be obtained from one person alone it would not only be farcical, but also a hazardous proceeding to subject the city to the obligation of making a contract at the lowest price offered, when there was but one person who could lawfully bid for the privilege of sale; such a construction might *55 compel a contract for a price dependent upon the arbitrary will and caprice of one only of the parties.”
The making of such contracts after advertisement and receipt of competitive bids, to the lowest bidder, has relation to the conditions upon which the same may be made.
There is a clear distinction between the power or authority of officials to make contracts and the conditions upon which they may be made.
Let us assume that in view of the fact that this contract could not have been made with any other party but defendant, it might nevertheless be considered as valid: Can it be sustained and upheld upon other grounds ? The court is of the opinion that it can not. The board of trustees of public affairs could not make such contract without first obtaining an ordinance authorizing it to do so.
It is claimed that the contract was not within the $500 limitation of the statute, because it was severable; that it was an ob-obligation for $200 monthly payments.
The contract is to be regarded as an entirety, not as separable as contended by plaintiff. It Avas not merely for one month; it was made on a yearly basis for $2,400 payable $200 per month. The basis of payment was specifically made on a yearly basis, with payments to be made monthly. The character and nature of the subject matter of the contract shows it to be an entirety.
It is contended that as Section 4361 (amended in 103 O. L., 561) conferring upon the board of trustees of public affairs of villages the same powers and imposing the same duties as are conferred upon the director of public service in cities under Section 3961, that this section (3961) authorized the director of public service to make contracts for all other purposes necessary to the full and efficient management and construction of water works.
It is contended that this provision gave the board of trustees of public affairs authority to make the contract in question, and that it Avas entered into for the efficient management and the pumping of Avater within the purview of this section; that the conduct and control of the Avater works as a municipal institu *56 tion is entirely in their hands, the council having no say in the matter.
Such general power of management can not be effective as against such specific limitations as are found in Section 4361, so as to authorize the board of trustees to make a contract without complying with the provisions.
It must be concluded that the contract was executed without legal authority.
The statute confers authority upon the solicitor of the village to maintain a suit in injunction as in specific performance. To successfully prosecute such action there must be a clear legal or equitable right. If our construction of the statute be correct plaintiff has no foundation for relief except by claiming that defendant is estopped from asserting the illegality of the contract.
The authorities cited on the question of advertisement have been examined; they tend to support the argument of the solicitor. But this point is not considered as vital for the reason that the conclusion of the court is based upon the want of authority of the board of public affairs to make the contract without authority given by a municipal ordinance.
The requirement of the statute that an ordinance shall be passed conferring authority to make a contract for supplies when the amount exceeds $500 is mandatory and can not .be avoided. The rate of the $200 per month was fixed regardless of the number of watts that might be used.
We have considered carefully the theory that the $20]0 per month agreed to be paid the company might be considered as compensation of persons employed by plaintiff. A corporation may be classed as a person under some statutes, but it seems that the language of this statute contemplated compensation of persons employed for any work under supervision of the service de-’ partment. Furnishing motor pumps and power by electricity does not seem to be within the purview of provision for labor or compensation of persons to do labor or any work.
The conclusion is that the plaintiff can not maintain this action for specific performance for the reason that the council of the village of Millersburg did not authorize and direct the board *57 of trustees of public affairs to make the contract. To base the remedy of specific performance upon an estoppel would be a novelty..
The statutes authorize a solicitor or village or city attorney to maintain a suit in the nature of specific performance. From the very nature of contracts made with municipalities this class of equitable remedies is bound to be unlike those found in the usual and ordinary classes. In some general aspects there are elements analogous to ordinary remedies between individuals, viz.; the doing of complete justice; inadequacy of damages; where damages are impracticable.
The granting of the remedy by specific performance is discretionary — not an arbitrary or capricious discretion — but rests upon a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of thé case'. But it is a universal and fundamental principle of equity that contracts to be enforceable in equity must be free from mistake or illegality. Pomeroy, Section 1405.
This contract is not free from illegality; the only ground for enforcibility would be that the defendant would be estopped from denying the informality and illegality. Estoppel furnishes the basis for defense, and not for affirmative relief.
Compensation • of persons employed — the language of the exception in Section 4328 — may be claimed to have application to the employment of the electric company to do the pumping so as to furnish a continuous supply of water for the village.
A corporation may for certain purposes be classed as a person; but the primary intent and purpose of the language of Section 4328 was not to apply to such an artificial person as the electric company, because the paramount and only purpose was to have the company furnish the power to'do the pumping so as to dispense with coal and an engineer.
We have carefully considered every angle of the ease with a view to sustaining the contract. It is the natural desire to sustain a contract such as this one. A common expression is: A contract is a contract. It does not appeal to one’s sense of justice to permit a breach of a written undertaking such as this one. *58 But the power to make such contracts as this is statutory, and a valid one can be made only in the manner provided by statute.
The question of estoppel is presented under peculiar conditions. The statute authorizes the municipality to maintain an action in the nature of specific performance; it is equitable in nature, and unquestionably is to be founded upon equitable principles. Plaintiff is in the unfortunate position of not having followed the law, and bases its claims for relief only upon the ground that defendant having induced the contract, and having carried out and received its benefits as long as it was profitable and beneficial should not be permitted to abandon the same when it is not so profitable after conditions have changed.
But the action is equitable in nature, and the want of equity is present on the part of both parties; to maintain an action equitable in nature the plaintiff’s cause must be founded upon strict legal right. The plaintiff not having made the contract in strict accord with its statutory right and power, its cause lacks the equitable right essential to enable it to seek equity.
A court of equity can do nothing more therefore than to leave the parties in the position in which it finds them.
The conclusion is that plaintiff is not entitled to maintain this action.
The finding, judgment, and decree is against plaintiff and in favor of defendant. An order may accordingly be entered. Exceptions may be noted in entry.