## TABB *v.* MALLETTE.

1. A watchman employed by a private corporation to police its own property, who is paid by the employing company, and who is subject to discharge by his employer, is not a municipal officer whose wages are exempt from garnishment, notwithstanding such watchman is clothed with the power to make arrests and is subject to the supervision and control of the police department of the city government.

2. A person under a contract of employment contemplating services mainly of work requiring mental skill or business capacity, and involving the exercise of his intellectual faculties, rather than work the doing of which properly would depend upon a mere physical power to perform ordinary manual

7

labor, is not a laborer whose wages are exempt from process of garnishment.
3. There being no conflict in the evidence, the court properly directed a verdict.

Submitted April 11, — Decided May 13, 1904.

Garnishment.    Before Judge Barrow.    Chatham superior court. July 8, 1903.

*P. J. O'Connor* and *John E. Schwarz*, for plaintiff in error.
*D. H. Clark*, contra.

EVANS, J.    Mrs. A. R. Mallette sued E. C. Tabb in a justice's court, and, upon filing her affidavit and bond, caused a summons of garnishment to be issued and served on the Central of Georgia Railway Company.    The garnishee answered that it was indebted to the defendant in a named sum, which was due to him for his monthly wages as a laborer, and that such wages were exempt from the process and liabilities of garnishment.    The defendant also filed his answer, claiming that all money owing him by the garnishee had been earned by him as a day laborer while in its employment.    The issues formed on the answers were tried in the justice's court, and an appeal was taken to the superior court.    On the trial of the appeal the evidence was as follows:    The paymaster of the garnishee company testified:    The defendant, E. C. Tabb, " was employed by the Central Railway Company as a policeman. He is paid at the rate of $60.00 per month.    It is part of his duties to check off the number of bales of cotton or boxes of merchandise as they pass over the railroad bridge on the trucks, and to see that the number of bales and boxes correspond to the amount called for on the ticket held by the driver.    In any case where there is a dispute he turns the truck back.    Tabb has nothing to do with the marks of the shipper on the cotton and boxes.    He only counts the number of packages on the trucks and sees that they correspond to the number on the ticket.    In case of a question arising, I think the sergeant would settle the dispute.    Tabb receives all orders from the sergeant, such as the limits of his beat and the length of his tours of duty.    He is not allowed to sit down at any time while on duty, but must walk his beat continually.    If he loses a day and has no good excuse, he is docked for same.    I don't know of any mental work he does, except checking packages. Tabb is general custodian of the company's property.    He is hired, paid, and discharged by the company."    Another witness, the su-

perintendent of police for the City of Savannah, testified: "The Ocean Steamship force is, to a certain extent, under my control. When a man joins the police force, he is given a copy of the rules by which he is to be governed, and is supposed to acquaint himself with them as soon as possible. The men are never examined, so far as I know, as to their knowledge of the rules. When one of the rules is violated, the mayor has charge of the matter. Tabb is subject to the same rules as govern city policemen and subject to the commands of the officers of the city police. All policemen are required to read and write English understandingly. Tabb is really not employed by the city, although subject to the same rules that govern the city police. He is employed, paid, and discharged by the Central of Georgia Railway Company."

The defendant Tabb, as a witness in his own behalf, testified: "I am a policeman on the Ocean Steamship Company's wharf, and and have been for four years. Before joining the police force I had to pass a physical examination. My tours of duty run from seven to ten hours; seven in the day and ten at night. During my tours of duty I am continually walking; am not allowed to sit down or rest, and am exposed to all kinds and conditions of weather. I am not allowed to hold conversation with any one, except in the discharge of my duties. I receive all instructions from the sergeant. In any case of dispute, the matter is always left to the sergeant for settlement. In the absence of the regular bridge man, I check the number of packages on the trucks or drays that pass over the bridge. I only count the number of packages. I also catch the line from incoming ships; and in case of bad weather, I help move the boxes of merchandise on the wharf to places of safety. I am paid at the rate of $60.00 per month, and am docked for loss of time. I was not required to pass mental examination. No rule-book was ever given me. . . I make no written reports whatever. I have nothing whatever to do with the marks on cotton. . . The limits of my beat are not always the same. We are changed about. The sergeant directs us what to do. If I am in doubt about my right to arrest a person, I send for the sergeant. If it is a plain case, I send the person to the barracks. There is a regular man to check packages at the bridge and to catch lines from the ships; but in case of his absence, I am required to do his work. It is a part of my duty. It is also part

of my duty to move packages to places of safety during rain. I am in uniform during my tour of duty, and carry a pistol and club. During the absence of the sergeant, I make the arrest if it becomes necessary to make an arrest. I send for the sergeant; and if he can not be found, I determine myself whether or not to arrest the party I only help to remove freight to places of safety during rain. There are men employed for such purposes as this, but it is a part of my duty to help them in case of rain."

The plaintiff introduced in evidence certain provisions of the Code of Savannah, declaring that the watchmen employed by the railway company should be under the supervision of the officers of the police department and under a duty to observe the rules therein set forth, by which the policemen of the city were governed. Upon the conclusion of the evidence the court directed a verdict for the plaintiff, finding the fund in the hands of the garnishee subject to process of garnishment. Error is assigned on the direction of the verdict.

1. There can be no question about the salary of an officer of a municipality being exempt from the process of garnishment. *McLellan* v. *Young*, 54 *Ga.* 399; *Holt* v. *Experience*, 26 *Ga.* 113; *Leake* v. *Lacey*, 95 *Ga.* 747. The reason for this exemption is founded on principles of sound public policy. In the case reported in 54 *Ga.*, Judge McCay said: "The exemption is not for the benefit of the officer, but because the public is not to be harrassed and inconvenienced by petty suits in the shape of garnishments, and the efficiency of its servants interfered with by any uncertainty whether when the salary is due it will be paid." Where a private corporation employs, pays, and discharges its own employee, the fact that the city clothes such employee with the power to arrest violators of municipal ordinances and places him under the superintendence of its police department will not make him an employee of the city. The city owes him nothing for his service; his compensation is paid by the employing corporation, and his wages are in no sense payable out of the city's funds. Unless his wages are otherwise exempt, they can be reached by garnishment of the employer.

2 There is usually more or less difficulty in applying an abstract principle of law to a given statement of facts. This is illustrated in the present case, where attorneys for both plaintiff

and defendant in error cite the same case (*Oliver* v. *Macon Hardware Co.*, 98 *Ga.* 249) in support of their respective contentions as to the definition of the word "laborer" as used in our garnishment statute. The character of the service rendered by the plaintiff in error is undisputed; he contends that the evidence shows that his service was mainly work of a physical nature; and the defendant in error insists that the only reasonable deduction from the evidence is that the service rendered under the contract of employment contemplated mainly work requiring mental skill and business capacity. The test of determining whether a particular individual performing certain services is a "laborer" is very carefully and accurately given by Judge Lumpkin in the case of *Oliver* v. *Macon Hardware Co.*, 98 *Ga.* 249, and I have taken the liberty of using an extract from it in formulating the syllabus for this opinion. Applying this test to the present case, the plaintiff in error was not a "laborer" in the sense in which this word is used in the Civil Code, § 4732. His employment called upon him to decide when a municipal ordinance had been infracted, and what course to pursue with regard to arresting the offender; what to do with him when arrested; whenever the emergency arose, he was to preserve order; and at all times he supervised the safety and security of his employer's property. To discharge these functions would require the exercise of the intellectual faculties. Very little manual labor was performed by him, but most of his work was of a supervisory nature demanding the exercise of mental skill and business capacity.

3. There being no conflict in the evidence, and all reasonable deductions or inferences therefrom demanding the verdict, the judgment is　　　　*Affirmed. All the Justices concur.*