[Sac. No. 4097. In Bank.—July 28, 1931.]

A. L. YOUNG MACHINERY COMPANY (a Corporation), Appellant, v. I. H. CUPPS et al., Defendants; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Respondent.

Kirkbride & Gordan and Kirkbride, Wilson & Brooks for Appellant.

Hartley F. Peart and Gus Baraty for Respondent.

CURTIS, J.—In this action we granted a rehearing for the reason that we failed in the opinion heretofore rendered by us to pass upon the special demurrer interposed to the second amended complaint in this action by the defendant surety company. We are in entire accord with the conclusions reached by us regarding the merits of the general demurrer as set forth in our former opinion, and we express our approval of this opinion by adopting it in its entirety.

It reads as follows:

"Plaintiff appeals from a judgment of dismissal in favor of defendant insurance company entered after the trial court had sustained a demurrer to plaintiff's second amended complaint without leave to amend. The facts as set forth in plaintiff's complaint, so far as necessary to be considered on this appeal, are as follows:

"On November 26, 1924, defendant Cupps entered into a contract with the county of San Joaquin for the construction of a designated public highway in the county for the total sum of $10,459.50. On December 4, 1924, Cupps filed with the board of supervisors of the county of San Joaquin a bond in the sum of one-half the contract price, naming the defendant insurance company as surety. The bond specifically recited that it was given and executed pursuant to the Public Works Act of 1919 (Stats. 1919, p. 487). It is then alleged that during the performance of the work under this contract, and between January 13 and February 16, 1926, the plaintiff sold, delivered and furnished to the contractor certain materials, supplies, implements and machinery, consisting of one 30-foot steel frame bucket elevator complete; one 36 by 12 inch screen; a one-yard drag scraper; and certain pulleys, belts, lanterns, hose and extension for the elevator; that there still remains due and unpaid on the above articles the sum of $1,405.75. It is then specifically alleged that the above equipment was 'furnished for use under the contract above mentioned and were used in, upon, for and about the work contracted to be executed and performed under said contract, and were totally used up, consumed, destroyed and worn out in, upon, for and about the performance of said work under said contract, and at the completion of said work had no further use or value for the purpose for which they were constructed, and were without salvage value'. The date of completion of the work and the filing of the verified claim and withhold notice required by the statute are then alleged, it appearing from such allegations that these steps were all taken within the time and in the manner provided by law. Plaintiff asks judgment against the surety on its bond for the amount of the unpaid balance on the purchase price of the above equipment.

"The trial court, holding the view that the purchase price of such equipment was not covered by the bond, sustained a demurrer without leave to amend. Respondent surety com-

pany contended on the demurrer, and contends now that it is not liable on the bond for the purchase price of such equipment, on the theory that the bond required by the public works statute allows recovery only for the reasonable rental value of such equipment, when such equipment is in fact rented, and allowed no recovery for the purchase price thereof.

"As stated above, the bond in question was a statutory bond given and executed under the 1919 act, as it then read. The act provides that on public work the contractor must give a bond for at least one-half of the contract price of the work, which bond must guarantee that if the contractor 'fails to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done or for any work or labor done thereon of any kind, that the surety or sureties will pay the same . . .' The bond issued by respondent is broader in many respects than the bond required by the statute. Both appellant and respondent devote the major portion of their briefs to the question as to whether those provisions in the bond more onerous than those required by the statute can be enforced against the surety. It is not necessary to determine that point on this appeal. It is our opinion that the expressions 'materials' and 'supplies' found in the statute are sufficiently broad to include equipment of the nature involved herein, when such equipment is purchased for the particular job, and is entirely consumed thereon, except for normal salvage value. █ It is true, of course, that the purchase price of equipment capable of being used on more than one job and which becomes part of the contractor's general equipment, is not covered by the statute, but when the equipment is of such a nature that in the usual course of events it will be entirely used and consumed on the particular job for which it was purchased, it is our opinion that such equipment is included within the meaning of 'materials' and 'supplies', as used by the statute. Respondent cites several mechanics' lien cases which indicate that in those cases the lien extends only to those articles which physically go into the structure against which the lien is sought to be exerted. Those cases are not in point. █ It has repeatedly been held in reference to the 1919 act, and its predecessors, that such acts are to be

more liberally construed than the mechanic's lien statutes, and that the reasons for giving a limited construction to the latter are not applicable to the former. (*Pacific Wood & Coal Co.* v. *Oswald*, 179 Cal. 712 [178 Pac. 854]; *Sherman* v. *American Surety Co.*, 178 Cal. 286 [173 Pac. 161]; *French* v. *Powell*, 135 Cal. 636 [68 Pac. 92]; *Associated Oil Co.* v. *Commary-Peterson Co.*, 32 Cal. App. 582 [163 Pac. 702].) It has been held under the 1919 act and similar public work statutes that rental of machinery, money expended on the hiring of mule teams, money spent for provisions, harness and other equipment, including scrapers, freight on mules and equipment, etc., are all recoverable against the surety. (*Williamson* v. *Egan*, 209 Cal. 343 [287 Pac. 503]; *Pacific Wood & Coal Co.* v. *Oswald, supra; Bricker* v. *Rollins & Jarecki*, 178 Cal. 347 [173 Pac. 592, 594]; *Sherman* v. *American Surety Co., supra; Peoples Nat. Bank* v. *Southern Surety Co.*, 105 Cal. App. 731 [288 Pac. 827].) The theory of these cases is that the statute was intended to cover all those things which have contributed to the improvement, whether directly by physically going into the construction, or indirectly, by being entirely consumed or used in the construction. In discussing the word 'supplies', as used in a previous statute, the court in *Bricker* v. *Rollins, supra,* stated: 'The ordinary meaning of this term in its general and accepted use is such as to include goods, wares, and merchandise of almost every kind and nature, whether used in the household or on the farm, or in any sort of productive or constructive work requiring the labor or service of men or animals or machinery. In the instant case they were furnished to be used, and were actually used, in advancing the work to be done under this contract, and in that sense entered into and became a component part of it and of the thing produced by it. This being so, we are of the opinion that as to the above classes of claims the trial court was correct in their allowance.'

"The true test in such cases was indicated by the supreme court of South Dakota in the recent case of *Dennis* v. *Enke*, 55 S. D. 15 [224 N. W. 925]. In that case the question involved was whether the seller of a $3,000 tractor would recover from the surety the balance of the purchase price on a bond somewhat similar to the one here involved. We take the liberty of quoting from that case at some length.

At page 927 of 224 N. W. that court, after analyzing certain earlier cases, stated: 'This court has indicated in those cases that absolute and entire consumption in the work is not essential to liability, and liability is not necessarily prevented by the fact that there may be some salvage value in the materials or other supplies. It is enough if they were purchased directly and particularly for the work, were proper for the work, and were used therein, and consumed therein to such an extent that their residual value is a salvage value only as distinguished from a new value, as illustrated by pipe cut and threaded in certain lengths, lumber cut up and nailed in place to make a tool shed or a form for cement, etc. That these items have some residual value is of course true, but it is a very different value both in kind and amount from that of new lumber or new pipe in standard lengths and dimensions, and this court has held, under the circumstances of the case heretofore considered, that the existence of some such residual salvage value did not necessarily prevent liability on the part of the surety.

" 'The same rule was applied to the matter of minor tools and appliances in the Dennis case (*Dennis* v. *Great Northern Const. Co.*, 53 S. D. 646) 222 N. W. 269, where the items involved were two scrapers at $25.50 each, and certain repair items, and where the court below found as a fact (the appeal being from the judgment only) that all of the items were purchased for the purposes of the contract and were practically worn out in carrying out the provisions of the contract.'

"Again, at page 927 of 224 N. W., it is stated: 'It is a matter of common knowledge that the performance of contracts of this kind requires a plant and equipment suitable therefor, many items of which are expensive and the purchase of which could not be justified by any single contract unless it was extremely large. It is further a matter of common knowledge that this kind of work is generally performed by persons who engage therein as a business and who maintain, for the purpose of the general contracting business, a very considerable amount of equipment intended and designed to be used in that business over a period of several years and in the performance of a number of contracts. We do not think it can be said to be within the

contemplation of the parties that the surety on such a bond as this should be liable for the purchase price of tools and appliances which constitute and create, or become a part of, the general plant and equipment of the contractor, as distinguished from those minor tools and appliances which are consumed or practically consumed in the performance of a particular contract. The underlying principle which distinguishes between liability and nonliability is comparatively easy to perceive and grasp, difficult to phrase accurately, and still more difficult to apply precisely in border line cases. There must always be somewhat of a twilight zone in these cases between liability and nonliability, dependent upon the facts in particular cases. The problem is similar to that faced by the cost accountant of a manufacturing plant in determining whether a certain tool or appliance should be charged as a direct expense item to a particular job or should be charged to plant and equipment; the estimated cost of its use in the particular job being ultimately taken into account by being embraced in the percentage of general overhead expense of plant equipment and factory charged to the particular job.

" 'In order to create liability on the part of the surety for the purchase price of tools and appliances under these contract bonds, at least the following elements we think must be present: First, the tool or appliance must be purchased specifically and particularly for use in the performance of the particular contract; second, the use of such tool or appliance must be at least proper, if not reasonably necessary, in connection with and about the carrying out of the contract; third, the tool or appliance must be used in or about the performance of the contract; fourth, the tool or appliance must be such that it is reasonably to be expected in the natural course of events that its normal life for the purpose for which it was designed will be practically consumed by its use in and about the performance of the contract, and in this connection the facts of each particular case must be taken into consideration. For example, general experience indicates that a crew of men engaged in the performance of a contract of this kind lose and break numerous small tools and items of equipment, such as shovels, spades, hammers, etc., by reason of which they are for all practical purposes really consumed in the performance of

the contract, notwithstanding the fact that such tools, if carefully handled and not lost, would be far from worn out by the actual amount of work for which they are used in the performance of a particular contract. If such small tools are purchased for the performance of the contract, are proper or reasonably necessary therefor, are used in such performance, and in such performance are lost or broken, and such loss or breakage is reasonably to be anticipated, it is entirely possible, that the surety on the bond might be liable.'

"The articles herein involved fully comply with all the requirements suggested by the above case. It is our opinion that if the articles in question were totally used up in the usual and ordinary performance of the contract, so that nothing remained in excess of normal salvage, they then lost their identity as tools, appliances, implements and machinery, and are included within the broader definition of the words 'materials' and 'supplies'. In such a case, in effect, they entered into and became a component part of the construction work. Certainly it is true that their full usefulness has entered into the work to the same extent as has hay for the horses or food for the men. Each case must be determined on its own facts. In the case at bar the plaintiff has alleged the articles were purchased for the particular job and were entirely used up and consumed thereon. The truth of these allegations is admitted on demurrer. We are of the opinion that it was error to sustain the general demurrer without leave to amend. It is our opinion that plaintiff not only can, but has stated a cause of action. We do not mean by this to forecast the result of the action, which, of course, must await upon the character of the evidence adduced at the trial."

The second amended complaint as against a general demurrer states a good cause of action, and were there no other questions presented on this appeal the order sustaining the demurrer would have to be reversed.

Defendant surety company however, in addition to its general demurrer, also demurred specially to plaintiff's second amended complaint, which pleading we will hereafter refer to as the complaint.

One of the grounds of uncertainty specified in said special demurrer was that it could not be ascertained from

said complaint when said implements were sold to the defendant Cupps. In paragraph VIII of the complaint it is alleged that the time of the furnishing and delivery of said implements to defendant Cupps was between the thirteenth day of January and the sixteenth day of February, 1926. In the notice of claim of lien this time is stated in one place as between the thirteenth day of January, 1923, and the sixteenth day of February, 1925, and in another place as between the tenth day of January, 1925, and the twenty-third day of May, 1925.

It is apparent, therefore, that there is a direct conflict between the averments of the complaint as to the time the implements were sold and the statement in the notice of claim of lien, a copy of which is attached to and made a part of the complaint. There is also a conflict in the two statements contained in the notice of claim of lien as to the time of the sale of these implements.

The complaint, therefore, is uncertain in that it cannot be ascertained therefrom whether said implements were sold to the contractor during the months of January and February, 1926, as alleged in the complaint, or between January 13, 1923, and the sixteenth day of February, 1925, as set forth in said notice of claim of lien.

The time of sale of said implements becomes important for the reason that they must have been sold to the contractor to be used in carrying out his contract with the county of San Joaquin, which, as appears from the complaint, was dated November 26, 1924. They also must have been purchased before May 26, 1925, the date of the filing of the notice of claim of lien with the officials of the county. If we take the date of sale shown by the allegations of the complaint—"between the 13th day of January and the 16th day of February, 1926"—as the time of sale, then it appears that the implements were sold to the contractor long after the notice of claim of lien was filed. If we take the time given in the notice of claim of lien as the true date— "between the 13th day of January, 1923, and the 16th day of February, 1925"—then it appears that a part, and possibly all, of said implements were sold to the contractor before the execution of the contract.

It thus appears that plaintiff's pleading is in hopeless confusion. Conceding that plaintiff might have amended

its complaint to conform to the true facts, the same rule does not apply as to its notice of claim of lien. The statute requires said notice to be filed for record with certain officials of the county within a certain designated time. The time fixed by the statute for filing such a notice had elapsed long prior to the commencement of said action. No new or amended notice curing the defect in the notice which was filed could, therefore, legally have been filed. The filing of a proper and legal notice of claim of lien was a prerequisite to plaintiff's recovery against the defendant surety company.

The special demurrer on the ground of uncertainty was, therefore, properly sustained by the trial court. As it was impossible for plaintiff to amend its complaint so as to cure this defect—the uncertainty appearing in the notice of claim of lien—the order of the trial court sustaining the demurrer without leave to amend was not erroneous. In fact, no other order could have been proper.

The judgment is affirmed.

Shenk, J., Seawell, J., Waste, C. J., and Preston, J., concurred.

Rehearing denied.