[Civ. No. 4352. Third Appellate District.—December 9, 1931.]

THE McCORMICK SAELTZER COMPANY (a Corporation), Respondent, v. A. HAIDLEN et al., Defendants; SOUTHERN SURETY COMPANY (a Corporation), Appellant.

[Civ. No. 4353. Third Appellate District.—December 9, 1931.]

THE McCORMICK SAELTZER COMPANY (a Corporation), Respondent, v. A. HAIDLEN et al., Defendants; SOUTHERN SURETY COMPANY (a Corporation), Appellant.

[Civ. No. 4354. Third Appellate District.—December 9, 1931.]

J. N. BUESE et al., Respondents, v. A. HAIDLEN et al., Defendants; SOUTHERN SURETY COMPANY (a Corporation), Appellant.

[Civ. No. 4355. Third Appellate District.—December 9, 1931.]

GEORGE J. MILLER, Respondent, v. SOUTHERN SURETY COMPANY (a Corporation), Appellant.

George A. Work and Hall & Work for Appellant.

Carr & Kennedy, W. L. Southwell and Gaylord & Smith for Respondents.

PRESTON, P. J.—The above-entitled actions were consolidated and tried together by the court without a jury. Judgments went in favor of the plaintiffs in all the cases. From these judgments defendant Southern Surety Company alone prosecutes this appeal.

These actions are by various material claimants against Southern Surety Company, A. Haidlen Company, a partnership, and other formal defendants, growing out of materials and merchandise furnished in connection with the performance of a contract, dated June 23, 1927, made by A. Haidlen Company with the department of public works of the state of California, for the construction of a part of the state highway in Shasta County, between La Moine and "Gunshot Creek".

The defendant and appellant Southern Surety Company furnished the labor and material bond upon the contract. The contractor entered upon the performance of the contract, but before its completion became financially involved and was unable to complete the work and on February 20, 1928, appellant through its representative, Mr. U. S. Marshall, took over the work and completed the contract.

The various claimants herein filed withhold notices with the department of public works and thereafter a number of the claimants assigned their claims to plaintiffs herein and these actions followed. The department of public works and B. B. Meek, the director thereof, who were named defendants in these actions, filed proceedings to interplead and substitute the various claimants, who had filed notices against the retained percentage, and sought permission to pay such funds into court. These proceedings were entitled and filed in the action brought by plaintiff, The McCormick Saeltzer Company, to recover the Frank M. Brown account, and is the second action mentioned in the caption of this opinion. The court made an order for such substitution and interpleader, whereupon the funds, $15,345.52, were paid into the Superior Court of Shasta County by said department of public works, and said funds are still on deposit with the clerk of that court.

After the payment of said funds into court, and after an order was made for the consolidation of these four cases, H. F. Mielink, as trustee in bankruptcy of A. Haidlen Company, and as trustee in bankruptcy of A. Haidlen and Fred Fracaro, the individual partners in the A. Haidlen Company, was brought into these actions as a party defendant. Said trustee in bankruptcy, upon being served, appeared and filed an answer in all the above-entitled cases, denying the various allegations of the complaints.

The court after trial awarded judgments against said trustee in bankruptcy of the contractor and appellant Southern Surety Company for the full amounts claimed by the various claimants.

The judgment, in each case, provided that the amounts recovered by plaintiffs should be paid out of the funds paid into court by the said department of public works. The money paid into court far exceeds the aggregate amount of the awards to all claimants. No appeal has been taken by the trustee in bankruptcy. Therefore, as to the amounts awarded and the payment of the same out of retained percentage paid into court, the judgments are final as to him.

The claims of plaintiff and respondent McCormick Saeltzer Company are for merchandise of various kinds furnished to the contractor, and subcontractor, and used by them in the

progress of the work of the construction of said highway embraced in the contract.

The claim of plaintiffs and respondents Buese and Verran, in addition to such merchandise as was furnished by McCormick Saeltzer Company, includes items for rental or structures used by the contractor for a mess-hall and storage and for power and lights.

Plaintiff and respondent Miller is an assignee of a large number of claimants who sold provisions and provender and performed labor, rented teams, implements and other materials to said contractor, all of which were used and consumed by the contractor in the performance of the contract.

If all the contentions made by appellant on this appeal were sustained by this court, the result would be only a slight modification of each judgment. They are all to the effect that the trial court included items not properly chargeable against the surety or the fund paid into court.

Appellant conceded liability for all articles furnished by the various claimants *after it took charge of the work,* without regard to whether they constitute a liability against it under the Public Works Act or not. Therefore, we are only concerned on this appeal with articles used and consumed in the performance of the contract while the contractor was in charge of the work.

The bond involved in these actions was given in compliance with the Public Works Act, as it stood in 1925. This act provides:

"Every contractor, person, company or corporation to whom is awarded a contract for the improvement, erection or construction of any building, road, bridge or other structure . . . for this state or for any political subdivision or agency of the state, shall, before entering upon the performance of such work, file with the commissioners, managers . . . or other body by whom such contract was awarded, a good and sufficient bond to be approved by such contracting body, officers or board, in a sum not less than one-half of the total amount payable by the terms of the contract; such bond shall be executed by either two or more good and sufficient sureties or by corporate surety as provided by law in an amount not less than the sum specified in the bond, and must provide that if the contractor, person, company, or corporation, or his or its subcontractors

fail to pay for any *material, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor thereon of any kind, that the surety or sureties will pay for the same, in an amount not exceeding the sum specified in the bond,* and also, in case suit is brought upon such bond, a reasonable attorney's fee, to be fixed by the court. Such bond must by its terms inure to the benefit of any and all persons, companies and corporations entitled to file claims under this act so as to give a right of action to them or their assigns in any suit brought upon said bond.''

Appellant contends that the following items are not proper charges against the surety or the fund: ˙

(a) Hotel equipment, such as dishes, sheets, etc.;

(b) Food furnished for the operation of the hotel;

(c) Contractor's equipment and parts, such as small tools, rope, coal, etc.

We find no merit in any of these contentions.

█ The rule seems to be now well established that bonds furnished under the Public Works Act of this state are to be liberally construed to effect the manifest purpose of the statute, the theory being that the statute here under consideration was intended *to cover all those things which contributed to the improvement, whether directly by physically going into the construction, or indirectly, by being entirely used or consumed in the construction.* (*Pacific Wood & Coal Co.* v. *Oswald,* 179 Cal. 712 [178 Pac. 854] ; *Sherman* v. *American Surety Co.,* 178 Cal. 286 [173 Pac. 161] ; *French* v. *Powell,* 135 Cal. 636 [68 Pac. 92] ; *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal. App. 582 [163 Pac. 702]˙; *A. L. Young Mach. Co.* v. *Cupps et al.,* 213 Cal. 212 [2 Pac. (2d) 321] ; *J. F. Tolton Co.* v. *Maryland Casualty Co.,* (Utah) 293 Pac. 611; *Williamson* v. *Egan,* 209 Cal. 343 [287 Pac. 503] ; *Bricker* v. *Rollins & Jarecki,* 178 Cal. 347 [173 Pac. 592, 594] ; *People's Nat. Bank* v. *Southern Surety Co.,* 105 Cal. App. 731 [288 Pac. 827] ; *Ryan* v. *Shannahan,* 209 Cal. 98 [285 Pac. 1045].)

In a number of these cases it was held that rental of machinery, money expended on the hiring of teams, money spent for provisions, equipment, etc., are all recoverable against the surety.

In *Bricker* v. *Rollins & Jarecki, supra,* the Supreme Court, in construing the original Public Works Act, defined the scope of the word "supplies" as follows:

"The ordinary meaning of this term (supplies) in its general and accepted use is such as to include goods, wares, and merchandise of almost every kind and nature, whether used in the household or on the farm, or in any sort of productive or constructive work requiring the labor or service of men or animals or machinery. In the instant case they were furnished to be used, and were actually used, in advancing the work to be done under this contract, and in that sense entered into and become a component part of it and of the thing produced by it. This being true, we are of the opinion that as to the above classes of claims the trial court was correct in the allowance."

It was expressly found by the court upon ample evidence that "said materials, provisions, provender and other supplies were furnished to A. Haidlen Company and to Southern Surety Company to be used and the same were actually used by said defendants in, upon, for and about the performance of the work . . ."

█ Tested by the rules clearly announced in the foregoing authorities and in view of the court's finding that all articles objected to were actually used and consumed by the contractor in the construction of said highway, we see no escape from the conclusion that all such articles are recoverable against the surety.

█ Appellant also contends that respondents were not entitled to recover for the supplies furnished for the mess-house, because transients were occasionally accommodated there.

There is likewise no merit in this contention for, at least, two good and sufficient reasons:

First: The accommodation of transients at the mess-house or hotel occurred during the first two months of the work, and the accounts of respondents for those two months were fully paid by the contractor, and are no way involved in the cases at bar.

Second: Under the uncontradicted evidence such transient accommodation amounted to less than one per cent of the operations of the mess-house.

Furthermore, the evidence shows that the bulk of the provisions for the mess-house were purchased by the contractor from various wholesale houses in Sacramento and San Francisco, and those firms were evidently paid and are not claimants in these actions. There was no showing that the food furnished by respondents and the various claimants represented by them went to feed the *men of other employers*.

A further discussion of the various items claimed to be improperly charged against appellant is entirely unnecessary. Suffice it to say, we have examined them all with care, and find the learned trial court was exceedingly careful and no injustice was done appellant; no item of any consequence was improperly charged against it.

Considering the large number of accounts involved the record is singularly free from error.

The respondents and the claimants whom they represent are justly entitled to the full amounts of the judgments rendered and the liability of appellant in each case was clearly established.

We find no merit whatever in the appeal.

The judgment in each case is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 8, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 4, 1932.