[Civ. No. 8241. Second Appellate District, Division Two.—April 26, 1934.]

CRANE COMPANY (a Corporation), Respondent, v. BOR-WICK TRENCHING CORPORATION, LTD. (a Corporation), Defendant; THE FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Appellant.

320

Jennings & Belcher for Appellant.

Derthick, Cusack & Ganahl for Respondent.

ARCHBALD, J., *pro tem.*—Appeal by the Fidelity and Casualty Company of New York from a judgment in favor of plaintiff and against appellant and its co-defendant.

The Borwick Trenching Corporation, Ltd., entered into a contract with Rubio Canyon Land and Water Association of Altadena, consisting of a proposal by said trenching company, dated March 27, 1931, and addressed to said water association, which so far as material here reads as follows: "We will furnish and install the pipe for the proposed water

lines on Mendocino, Lake, Calaveras and Morado streets as follows: 10-inch O. D. pipe dipped installed complete, $1.10½ per foot". This was followed by the description of three other sizes of pipe of different diameters and different prices for complete installation. The proposal then continues: "The above prices include the digging, welding, back-filling pipe, boring and tie-ins on new lines. The water company is to furnish all valves and fittings and water to backfill the ditches. . . . All permits are to be furnished by the water company. . . . If bond and additional insurance is to be carried the cost of same will be paid by the water company. . . . All resurfacing of streets are [sic] to be made by the water company." Such proposal was accepted by the water company in the following, dated April 6th: "Your bid of March 27, 1931, covering installation of pipe lines as shown on plans submitted to us is hereby accepted under these conditions. You are to furnish bond in the amount of your bid guaranteeing satisfactory completion of the work. You are to furnish insurance to cover us in the same insurance company as your own policy, this policy is to be $50,000 public liability and only for this job. You are to guarantee all work for a period of one year. All work to be done under our supervision. We are to get the benefit of Crane Company's billing of 2% May 10th on the amount of pipe used. We will furnish state permit, county inspector, all fittings not made by welding and resurface streets." The conditions mentioned were "accepted" by the trenching company.

The bond furnished and upon which this action is based reads in part as follows: "We, Borwick Trenching Corp., Ltd., of Downey, California, . . . as principal, and the Fidelity and Casualty Company of New York . . . as surety, are held and firmly bound unto Rubio Canyon Land and Water Association of Altadena, California . . . in the sum of . . . ($3,200), for the payment whereof said principal and surety bind themselves firmly by these presents. Whereas, the principal has entered into a written contract . . . with the obligee for furnishing and installing 2650 feet eight-inch pipe, 650 ten-inch pipe, 250 six-inch pipe and 150 four-inch pipe . . . ; now, therefore, the condition of this obligation is such that if the principal shall *faithfully perform the work contracted to be performed under said contract,* then

this obligation shall be void, · otherwise to remain in full force and effect. Subject, however, to the following conditions. . . . Third: . . . This bond does not cover any provision of the contract, or specifications, respecting guaranties of efficiency, or wearing qualities; or for maintenance or repairs, nor does it obligate the surety to furnish any bond, policy or obligation other than this instrument. Fourth: That no suit, action, or proceeding by the owner to recover on this bond shall be sustained unless the same be commenced within six months from the ,completion of said . . . work of improvement . . . ''

It was admitted by plaintiff that the work to be done under the contract was completed June 1, 1931, and it was stipulated that plaintiff, between April 1 and April 18, 1931, furnished and sold to the trenching company materials actually used by it in such work, of the reasonable and agreed value of $2,249.90, no part of which was paid. Judgment was given for said amount.

The sole question involved in this appeal is: Was such bond a contract expressly made for the benefit of respondent? If so, it could be enforced by it.

The language of the contract as well as the bond, in our opinion, shows clearly that no attempt was made to furnish a statutory undertaking under section 1183 of the Code of Civil Procedure. The one in question is a common-law bond, and on its face seems to be solely for the protection of the water company, with reasonable requirements for the protection of the surety. There is nothing in the contract referred to in the bond requiring the contractor to pay for materials furnished in doing the work. Neither does the bond upon its face purport to secure such payment, nor is it conditioned upon the faithful performance of *all of the covenants and agreements of the contract*. Furthermore, respondent's name is not mentioned therein except for the purpose of securing to the water company the discount of two per cent, which of itself implies that the water company as well as appellant expected the contractor would pay cash for the pipe to get such discount. The contract requires the contractor to furnish public liability insurance and to guarantee the work for a period of one year; yet the bond excludes liability on account of either, so far as appellant

surety company is concerned. The limitation of action on the bond runs against the obligee only.

Under such circumstances can it be said that the bond was made for the express benefit of anyone except the obligee therein named? Appellant says no. Respondent says yes, and points to the case of *Pacific States Electric Co.* v. *United States F. & G. Co.*, 109 Cal. App. 691 [293 Pac. 812], and cases cited. The test for determining whether or not a contract may be said to be expressly made for the benefit of another is laid down in the case of *Ryan* v. *Shannahan*, 209 Cal. 98, 104 [285 Pac. 1045], where the court says, quoting from the case of *French* v. *Farmer*, 178 Cal. 218 [172 Pac. 1102] : "If it can fairly be said from either the contract or the bond, which are to be construed together, that the parties intended to and did agree to pay such third person, a suit could be brought on such bond by such third person to recover upon the promise so made for his benefit."

██ The contracts in the cases relied on by respondent bound the contractors to furnish the necessary labor and materials for the respective jobs. The courts substantially held that there was necessarily implied therefrom the promise to pay for such labor and materials, and the bonds, guaranteeing as they did the faithful performance of *all the covenants and agreements of* such contracts, became a part thereof and covered such implied promise, and inured to the benefit of the person furnishing labor, etc. In the instant case the proposal of the contractor is to "furnish and install the pipe for the proposed water lines". Undoubtedly under such proposal it would be implied that it would pay for the pipe, although there is no express promise so to do. Turning to the bond involved here, however, we do not find a guarantee on the part of the surety that *all the covenants and agreements of the contracts will be performed,* but only the undertaking that the contractor "shall faithfully *perform the work contracted to be performed".* We find nothing in the bond indicating that it was the intention or agreement of the surety to guarantee anything to the contractor, nor can we read any such agreement into the plain language used in the bond. The securing of the pipe was a duty placed wholly upon the contractor; and when the pipe was furnished and the work completed, every require-

ment secured by the bond had been performed. Paying for the pipe and the labor for installation was a matter of no concern to the water association, and was not within the purpose of the bond. ''It is elementary that 'sureties are never bound beyond the strict letter of their contract; that they have the right to stand upon the precise terms of their agreement, and that there is no authority for extending their liability beyond the stipulations to which they have chosen to bind themselves'. (*Callan* v. *Empire State Surety Co.*, 20 Cal. App. 483, 485 [129 Pac. 978].)'' (*W. P. Fuller & Co.* v. *Alturas School District*, 28 Cal. App. 609, 612 [153 Pac. 743].)

The court in the instant case made findings of fact and a conclusion of law. Both are contrary to the conclusions reached by us here. Because all of the material facts affecting appellant were either admitted by the pleadings or stipulated, no findings were necessary.

Under the authority of section 956a of the Code of Civil Procedure it is ordered that the findings of fact and conclusions of law herein, so far as they affect appellant, be and they are vacated and set aside. The judgment against appellant is reversed and the trial court is instructed to enter a judgment in its favor.

Stephens, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1934.