[Civ. No. 5294.   Third Appellate District.—May 13, 1935.]

HOWARD L. CHRISTIE, Respondent, v. COMMERCIAL CASUALTY INSURANCE COMPANY (a Corporation), Appellant.

Ernest T. Hall and Richard Pausch for Appellant.

Nelson & Ricks for Respondent.

THOMPSON, J. — The defendant Commercial Casualty Company, a corporation, has appealed from a judgment rendered jointly against it and the Redwood Construction Company, Ltd., as principal and surety, upon a bond which obligates the insurance company to pay "for any work done . . . of any kind" by the construction company in fulfillment of a contract with the United States government to build a public roadway in the General Grant national park in Fresno County. The plaintiff sued the principal and surety on the bond for labor performed for an agreed compensation as foreman of the construction work. ·The appellant contends it was released from liability on the bond by the change of membership of shareholders in the construction company after the plaintiff was employed as foreman by means of which one share was transferred to the plaintiff and he thereafter became an officer of the corporation and that the bond does not contemplate the payment of the wages of a foreman.

The defendant Bodenhamer Construction Company, against which no judgment was rendered, held a contract with the United States government for the construction of the roadway. The defendant Redwood Construction Company, Ltd., was a subcontractor, which actually performed the work of building the roadway. July 15, 1931, the plaintiff was employed by the Redwood Construction Company as foreman of the road work at an agreed salary of $250 a month. July 21, 1931, the Redwood Construction Company, as principal, and Commercial Casualty Insurance Company, as surety, executed a bond to Forrest N. Bodenhamer, doing business under the name of Bodenhamer Construction Company obligating themselves to pay for "any materials, supplies, teams, implements or machinery furnished", and for "any work done thereunder of any kind" by the subcontractor. The Redwood Construction Company was incorporated in February, 1931, with three

shareholders, consisting of Thomas and Eleanor Engelhart and Norman O. Underwood. August 11, 1931, Underwood resigned as vice-president of the last-mentioned company, and assigned his one share of stock to the plaintiff, Christie, who thereafter attended the meetings of the construction company and participated therein as vice-president. It does not appear that he received any profit or pay for his services as an officer of the company. He apparently became a mere nominal member of the company. No change was made in his duties as foreman of the construction work, or in his compensation previously agreed upon. He continued to perform his work as foreman in exactly the same manner that he did before he became a shareholder and officer in the company. In September, 1931, as such vice-president, Christie executed three bills of sale to certain machines from the Redwood Construction Company to E. T. Hall, who was then the general attorney for the Commercial Casualty Insurance Company. The appellant then had knowledge of the fact that Christie was an officer of the Redwood Construction Company, but made no protest against the change in the shareholders of the corporation, or against his participation as an officer thereof. In fact, Mr. Hall, as general attorney for the surety company, then negotiated with Christie as a representative of the construction company to settle certain claims regarding the use of the machines in question.

The Redwood Construction Company defaulted in its payments of certain claims for services performed in the construction of the roadway, among which was a balance of $1117.90 due the plaintiff as foreman of the job. This suit was brought by the plaintiff against the principal and surety on the bond, to recover the balance due him for services performed. The insurance company affirmatively alleged in its answer that the alteration of the relationship of the plaintiff with the construction company, when he became vice-president thereof, released it from all obligation to him upon the bond. The cause was tried by the court sitting without a jury. Findings were adopted by the court favorable to the plaintiff on all the material issues of the case. Judgment was accordingly rendered in favor of the plaintiff for the sum of $1117.90. From that judgment the insurance company has appealed.

Notwithstanding the fact that the bond which is involved in this case is a common-law bond by the terms of

which the *contractor* is assured that all materials, supplies, machinery and work of any kind which are used or performed in the construction of the roadway, will be paid by the insurer in the event of the default or failure on the part of the sub-contractor to do so, the plaintiff, who is not a party to the bond, is entitled to maintain in his own name an action on the bond to recover unpaid wages earned by him as foreman of the road construction work under the contract. (*French* v. *Farmer*, 178 Cal. 218 [172 Pac. 1102]; *Crane Co.* v. *Borwick Trenching Corp., Ltd.*, 138 Cal. App. 319 [32 Pac. (2d) 387]; *Union Sheet Metal Works* v. *Dodge*, 129 Cal. 390 [62 Pac. 41]; 23 Cal. Jur., p. 1096, sec. 81.) The language of the bond leaves no doubt it was furnished for the direct benefit and protection of those who perform work or supply materials for the roadway in accordance with the contract, although they may not be parties to that instrument.

We are of the opinion the common-law bond which was given in the present case to secure the payment of all work and labor "of any kind" performed in the course of the construction of the roadway in question is security for the payment of plaintiff's agreed wages as foreman, in the fulfillment of which duties he actually performed manual labor and at all times directed and supervised the work of other employees engaged on the job, notwithstanding the fact that one share of stock in the corporation which was constructing the roadway was subsequently issued to him, and that he thereafter acted as a vice-president of that organization. Before he became associated with the corporation, he was employed as foreman of the job at a fixed compensation of $250 a month. His association with the company was a mere accommodation to enable it to continue to function after one of its three shareholders retired from the company. He was neither promised nor paid compensation for his services as an officer of that company. He claimed no pay for that service. He continued faithfully to work and perform his duties as foreman of the construction work, after he assumed the added function of an officer of the company in exactly the same manner that he did before participating in its affairs as one of its officers. It is not claimed that he is seeking pay as an officer of the company. His claim for compensation is solely for services rendered as foreman of the construction work.

The appellant has cited several cases in support of its contention that an officer of a construction company may not resort to the surety bond for compensation for services performed in fulfillment of the contract, even though the work is separate and distinct from his duties as an officer of the company. These cases, however, are readily distinguishable from the present cause. Several of those decisions relied upon by the appellant were based on mechanic's liens. ▮ A common-law or statutory bond to secure the payment of labor performed on public work pursuant to a contract should receive a liberal construction so as to fulfill the evident purposé of the bond. Upon the contrary, it has been held that a suit upon a bond appertaining to the enforcement of a mechanic's lien, should be more strictly construed. (*Pacific Wood & Coal Co.* v. *Oswald,* 179 Cal. 712 [178 Pac. 854] ; *A. L. Young Machinery Co.* v. *Cupps,* 213 Cal. 210 [2 Pac. (2d) 321] ; *McCormick Saeltzer Co.* v. *Haidlen,* 119 Cal. App. 96 [6 Pac. (2d) 255].) In the Pacific Wood & Coal Company case, above cited, it is said in that regard :

"Statutes requiring bonds for the protection of persons dealing with contractors on public work are different in their purpose and effect from acts for the establishment and enforcement of mechanic's liens, and that the reason for giving a limited construction to the latter are not applicable to the former. (See *French* v. *Powell,* 135 Cal. 636 [68 Pac. 92] ; *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal. App. 582 [163 Pac. 702].)"

▮ The appellant contends that its bond to secure the payment of "any work done . . . of any kind" does not contemplate the payment of compensation to a mere foreman of the construction work for the reason that the term "work" refers only to manual labor. This is too narrow a definition of the word "work" as it is used in the bond. It is true that in an elaborate note following the case of *Tabb* v. *Mal-, lette,* reported in 120 Ga. 97 [47 S. E. 587, 102 Am. St. Rep. 78, 91], the term "laborer" is defined in the manner contended for by the appellant in this case as applied to the principle of exemption of an employee's wages. Numerous cases are also cited by the appellant which distinguish between the services of a superintendent of construction work and mere manual labor. These cases, however, usually apply to suits to enforce mechanics' liens or a preference of labor-

ers' claims under the Bankruptcy Act. These authorities may be readily distinguished from the present case. As the California courts have wisely held, a bond to secure a mechanic's lien was intended to give the manual workman a preference over skilled laborers, and hence the bond is more strictly construed. The same principle applies to the preferred claims of workmen under the Bankruptcy Act. But, in accordance with the California cases heretofore cited, an ordinary statutory or common-law bond to secure the payment of claims for materials furnished or labor performed should receive a more liberal construction of the language to carry out the evident intention of the parties to the instrument. We have no doubt from the language of the bond in question that the parties thereto intended to secure the payment of all materials furnished and "work done . . . of any kind" in fulfillment of the contract to construct the roadway, including the services of a foreman, as well as the work of a manual laborer. The manner in which these terms are used will determine their meaning. We find no clear-cut distinction between the terms of "labor" and "work" as these words are primarily defined by modern dictionaries. Both of these terms include both mental and physical effort. Among the preferred definitions of the term "work" is that it consists of "physical or intellectual effort". And the term "labor" is defined as "physical or mental toil; bodily or intellectual exertion". In the case of *Wandling* v. *Broaddus,* (Mo.) 10 S. W. (2d) 651, 655, which was a suit to recover compensation for services performed, it was held that the mere supervision of remodeling a house constitutes "labor". To the same effect are the cases of *Silver* v. *Harris,* 165 La. 83 [115 So. 376, 378], and *Continental Life Ins. Co.* v. *Turnbough,* 151 Miss. 43 [117 So. 334]. In the case of *Gaastra, Gladding & Johnson* v. *Bishop's Lodge Co.,* 35 N. M. 396 [299 Pac. 347, 349], it was held that an architect who prepared plans and specifications for the construction of a building was entitled to a mechanic's lien for "labor performed". The court there said with regard to the contention that the term "labor" applied only to manual effort, to the exclusion of intellectual work:

"We regard this view as obsolete and inconsistent with that liberal construction of our mechanic's lien statutes to which this court is committed. . . . 'The appellants say the

lien is given only to a person who labors, and the architect and contractor did not labor. If they did not labor, what word will characterize the service they furnished? When the architect idealized the structure and put it upon paper, what was his effort if not labor?' ''

Who shall say that intelligent activity of the mind, whether it is registered in the form of plans and specifications for a building or is exercised in a wise and efficient supervision of workmen in the construction of a public roadway is not real labor. Indeed, a little mental energy on the part of a workman is quite likely to enhance the value of his manual service. A wholesome respect for manual labor should not disparage the pursuit of any other class of honest, efficient work. To register one's ideas on paper may prove to be as laborious as scratching the surface of the soil with a hoe or a rake. It is absurd to say that a man may work or labor only by means of his hands. We are satisfied that the language of the bond in the present case was intended to insure the payment of the foreman's compensation as well as the work of those men who handled a pick or a shovel.

The appellant has cited numerous authorities in support of its contention that it was released from all liability on the bond for plaintiff's compensation for services as foreman on account of his subsequent membership in the construction company. Upon a careful examination of each of these decisions, we are of the opinion they do not apply to the facts of this case. In the first place they are all cases in which claimants sought to enforce preferences under the United States Bankruptcy Act for the payment of compensation for services performed. All of these cases, with one or two exceptions, involved the question as to whether an officer of a corporation was entitled to a preference under the Bankruptcy Act for the payment of his salary as an officer, or for salary as an officer combined with wages for manual labor separately performed, but which compensation for the different classes of work could not be segregated under the evidence so as to determine what proportion was claimed as salary as an officer, and what proportion was claimed in compensation of manual labor. In several of these cases the claimants for a preference were presidents, or sole stockholders, or managers in absolute control of the corporations who sought to recover salary allowed by the corporation as

such officers or managers. In several cases such officers did perform some incidental manual labor aside from their official duties, but sought only to recover a preference for official services in the form of a fixed salary, or when separate wages were claimed for manual labor, it was impossible to segregate that portion of the claim from the compensation for a fixed official salary. None of these cases hold, under circumstances like the present action, that a foreman of road construction work, who was hired for that particular purpose, and performed his duties as such foreman, and who claimed only compensation for his service as a foreman, is precluded from recovering upon a bond to secure the payment of "any work done . . . of any kind" upon a public roadway, merely because, as a matter of accommodation, he subsequently accepted one share of stock and acted without compensation as vice-president of the organization which had previously employed him. The authorities on that subject are readily distinguishable from this case. As an illustration, the case of *Wintermote* v. *MacLafferty,* 233 Fed. 95, is an action under the Bankruptcy Act wherein the claimant sought to secure a preference for the payment of the "balance of his salary" of $300 a month. He also acted as superintendent of mill work. His claim was for *the balance of his salary as an officer,* and not for labor as a mechanic in the mill. It was properly held that he was not entitled to a priority over general creditors. In the case of *Van Vlaanderen* v. *Peyet Silk Dyeing Corp.,* 278 Fed. 993, the petitioner, under a New York labor act which gives a preference in bankruptcy cases, to mechanics, workmen and laborers, sought to recover judgment for the balance of "his salary" of $200 a week, allowed by the corporation of which he was president and general manager. In the case of *Irving Trust Co.* v. *Roth,* 48 Fed. (2d) 345, the claimant sought to secure a preference under the Bankruptcy Act for payment of the "balance of his salary as President and sole manager of a one-man corporation". The court said: "The debt due to such a person *for salary,* at a rate fixed by him alone, would be a plain perversion of the bankruptcy act." The plaintiff in the present case had nothing to do with the fixing of the amount of his compensation as foreman. It is unnecessary to review the facts of each of these authorities relied upon by the appellant. They all apply to bankruptcy cases and furnish

no authority in support of the contention that the foreman of a job may not resort to a surety bond for compensation of his services for work performed under contract, as distinguished from the salary as an officer, even though he subsequently acts in a superficial manner without salary therefor as an officer of the corporation.

Finally the respondent asserts that the appellant is estopped from denying its liability under the bond for the balance of his compensation for services as foreman, because, with full knowledge on its part of Christie's claim of $1117.90, and that he acted as an officer of the subcontracting corporation, in consideration of the transfer to the defendant of some road machinery by three bills of sale executed to it on September 20, 1932, it subsequently agreed to recognize and pay plaintiff's claim of $1117.90 together with other unpaid obligations of the contractor. A list of these unpaid obligations, including the plaintiff's claim for $1117.90, was sent to the surety company August 16, 1932. Eleanor Engelhart, the secretary of the subcontracting corporation, testified positively and repeatedly, without objection, that these machines were transferred to the surety company by bills of sale with the understanding and agreement on the part of Mr. Hall that the surety company would release the Redwood Construction Company from all obligations and pay the claims contained in the list which was furnished to it on August 16th, including the plaintiff's claim of $1117.90. The appellant acknowledges the receipt of these bills of sale of machinery, but now contends that the verbal promise to pay plaintiff's claim is invalid under the provisions of the statute of frauds (sec. 1624, Civ. Code) and that the consideration therefor failed for the reason that the grantors had no title to the machinery which they purported to convey to the surety company.

It is the established rule of law that when a surety on a bond claims that he is released from obligation thereon because of an alteration of the instrument or on account of changed relationship of the claimant for wages, the surety must disavow his liability promptly, or within a reasonable time after learning of the alteration, or the surety will be bound by the bond in spite of the changed instrument or altered condition. (*Union Oil Co. of California* v. *Mercantile Refining Co.*, 8 Cal. App. 768 [97 Pac. 919]; 33 Cal. Jur.,

p. 1039, sec. 33; 50 Cor. Jur., p. 254, sec. 412.) In the Union Oil Company case, *supra,* it is said in that regard:

"The rule is just and supported by the authorities that where a document has been altered and notice of such alteration is brought to the attention of the parties affected, it is their duty to disavow it at once, or within a reasonable time after learning thereof, or they are bound by the document as altered."

And in 50 Corpus Juris, above cited, it is said in that regard:

"So the rule permitting the surety to waive defenses is applied to the defense of the statute of frauds; he may pay the debt, *although his promise was not in writing,* and recover the amount from the principal."

In the present case it appears that the appellant had full knowledge of the fact that the plaintiff became an officer of the subcontracting corporation after the execution of the bond and after his employment as foreman of the construction work, and yet no protest or claim of release from the bond on that account was made until the answer was filed in this suit. On the contrary, with knowledge of the change of relationship of the plaintiff, the surety subsequently renewed its acknowledgment of liability by accepting the bills of sale of machinery with an oral promise to pay the claim of the plaintiff. This constitutes a waiver of the surety's defense on the ground that the bond was exonerated, so far as it applies to the plaintiff's claim for wages, by his acting as a vice-president of the construction company.

The appellant waived the application of the statute of frauds by failing to object to the evidence of an oral agreement to pay the claim. (*Nunez* v. *Morgan,* 77 Cal. 427 [19 Pac. 753]; *McComish* v. *Kaufman,* 43 Cal. App. 507 [185 Pac. 476]; *Nielsen* v. *Swanberg,* 99 Cal. App. 270 [278 Pac. 786]; *Lesser* v. *W. B. McGerry & Co.,* 121 Cal. App. 193 [8 Pac. (2d) 1058]; 12 Cal. Jur., p. 941, sec. 110.)

The record leaves a doubt as to who owned the title to the machinery in question. It is unnecessary for us to determine whether there was a failure of consideration for the new oral promise of the appellant to pay the balance of plaintiff's claim, since we have already held that he was entitled to recover on the surety bond, under the circumstances of this case, regardless of the fact that he acted as a foreman

of the construction work, and performed some service as a vice-president of the company.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1935.