[L. A. No. 25357.   In Bank.   June 24, 1959.]

MORRO PALISADES COMPANY (a Corporation), Appellant, v. THE HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation) et al., Respondents.

Charles E. Ogle for Appellant.

A. H. Brazil for Respondents.

SCHAUER, J.—This action is brought by plaintiff corporation as assignee of San Luis Obispo County. By such action the assignee seeks to have an allegedly assigned faithful performance bond reformed and to recover on it as reformed. The trial court sustained an amended demurrer to the complaint, without leave to amend, and ordered judgment of dismissal. Plaintiff appeals. We have concluded that defendant is correct in its contention that the bond could not properly be assigned to plaintiff, that no right of plaintiff to recover on the bond appears, and that the dismissal should be upheld.

The bond in question names defendant The Hartford Accident and Indemnity Company as surety, defendant Westfall as principal, and the County of San Luis Obispo as obligee, and purports to assure that Westfall would improve all of the streets and roads situated within a certain 34.7 acre tract of land subdivided by him in 1953 into 110 lots, and would "indemnify . . . the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse . . . the Obligee all . . . expense which the Obligee may incur in making good any such default . . ."

Besides alleging assignment of the bond to plaintiff the complaint avers that in June, 1953, defendant Westfall, acting as owner and subdivider of the tract, "caused the Board of Supervisors of San Luis Obispo County to accept a final subdivision map" of the tract in consideration of Westfall's promise that he would, as provided in county subdivision ordinance No. 184,[1] within a reasonable time improve all of the streets and roads in the tract as shown on the subdivision map, and that he would post with the county a sufficient bond to insure his faithful performance of the work.

About 10 days later Westfall, pursuant to his agreement with the county, delivered the bond in question, a copy of which is attached as an exhibit to the complaint. It is in the amount of $28,000 and recites that "Whereas, the Principal [Westfall] has entered into a *certain written contract with the Obligee, dated the 29th day of June, 1953* to COMPLETE ROADS, LOS OSOS HIGHLANDS, No. 2, SUBDIVISION . . . *which contract* is hereby referred to and made a part hereof as fully . . . as if copied at length herein.

"Now, Therefore, the condition of this obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee *all outlay and expense which the Obligee may incur* in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect." (Italics added.)

---

[1] Ordinance No. 184 is pleaded by title and date of passage, as permitted by section 459 of the Code of Civil Procedure.

The complaint further alleges that "by mutual mistake of the parties thereto the bond . . . did not fully and truly express the intention and meaning of the parties . . . in that the bond recites that the principal entered into a written contract . . . on the 29th day of June, 1953, whereas in truth and fact the principal . . . entered into an oral contract with the obligee on or about the 20th day of June, 1953."

It is further pleaded that Westfall commenced improving the roads but abandoned all work about the middle of December, 1953; the county road commissioner has estimated that it will cost $22,030 to complete the road work; the obligee county, in March, 1956, made written demand on defendant surety to perform the obligation of the bond, but the surety refused; plaintiff presently owns more than 50 per cent of the land in the tract; in October, 1957, the obligee county assigned its rights in the bond to plaintiff. The purported assignment is in writing and states that "In consideration of the execution, concurrently herewith, of Forbearance to Sue" by plaintiff, the county assigns to plaintiff "all of its right, title and interest, legal or equitable, as obligee, to enforce the provisions" of the bond. No document purporting to constitute a covenant not to sue anyone for anything appears in the record, nor are any terms or conditions of any such agreement alleged.

The complaint, filed October 21, 1957, seeks judgment against both the principal and the surety in the sum of $22,030. It does not appear from the complaint whether Westfall still owns land in the tract or has sold or conveyed to others the portions thereof not owned by plaintiff. Neither does plaintiff allege the means by which it became owner of the "more than fifty per cent" of the land which it claims. It does not appear that plaintiff is the only person (if any) who may or might have a claim against the county because of the principal's default.

Defendant contends, among other things, that the complaint fails to state a cause of action in that the alleged assignment of the county's rights in the bond is illegal and ultra vires. This contention is meritorious.

The rule is that rights and liabilities under a surety bond are to be determined from the language of the bond read in the light of applicable statutes. (See *County of Placer* v. *Aetna Cas. etc. Co.* (1958), 50 Cal.2d 182, 186 [1] [323 P.2d 753]; *Fernelius* v. *Pierce* (1943), 22 Cal.2d 226, 245 [7] [138 P.2d 12]; *Milliron* v. *Dittman* (1919), 180 Cal. 443, 445 [1]

[181 P. 779] ; *Hub Hdw. Co.* v. *Aetna Acc. etc. Co.* (1918), 178 Cal. 264, 267 [173 P. 81] ; 8 Cal.Jur.2d 620-621 ; 46 Cal.Jur. 2d 236-237.) The statutes applicable here are to be found in the state Subdivision Map Act (Bus. & Prof. Code, §§ 11500-11628), and in the county subdivision ordinance. That act provides (§ 11611) that following filing of the final subdivision map for approval the governing body shall approve the map if it conforms to legal requirements, and "shall at that time also accept or reject any or all offers of dedication and shall, as a condition precedent to the acceptance of any streets or easements, require that the subdivider, at his option, either improve or agree to improve the streets or easements in accordance with standards established by such governing body by local ordinance." In section 11612 it is provided that "In the event an agreement for the improvement of the streets or easements is entered into, the governing body may require that the agreement shall be secured by a good and sufficient bond . . ."

As declared in *County of Los Angeles* v. *Margulis* (1935), 6 Cal.App.2d 57, 59-60 [2] [44 P.2d 608], where the county sued to recover on a similar bond provided by a subdivider to secure faithful performance of his agreement to improve certain streets and build a storm drain, "Under the contract the county was entitled to have these highways so improved, and this right was of a value equal to the cost of the work. The contract having been breached by a failure to perform, the county was entitled to a sum equal to the cost of the uncompleted portion of the work . . . Under the contract the county was entitled to receive work of a certain value. This work not having been received, the county was entitled to receive in lieu thereof as damages a sum of money equal in value to the uncompleted work which the contract called for, and appellant as surety was liable under its bond up to the penal sum therein specified."

Here as in the Margulis case, the county presumptively is entitled to receive the road work which Westfall agreed to complete. And here the right to recover under the bond appears clearly to be a right of the county rather than of the owner of a portion of the property which might be affected by the default. (See *Evola* v. *Wendt Construction Co.* (1959), 170 Cal.App.2d 21, 25-26 [338 P.2d 498].) It is the county which is indemnified by the express terms of the bond against loss from "all cost and damage which

. . . [it] may suffer" from Westfall's default either in building the roads or in failing to "fully reimburse and repay the . . . [county] all outlay and expense which . . . [it] may incur in making good any . . . default." The involved surety bond may thus be likened to faithful performance bonds required by statute from contractors on state public works (Gov. Code, §§ 14371-14375) and on county building contracts (Gov. Code, § 25455). ▉ The general rule appears to be that if a public improvement faithful performance bond runs to the public body, action thereon must be brought in that body's name. (See McQuillan, Municipal Corporations, Vol. 13, §§ 37.200, 37.206; 8 Cal.Jur.2d 667-670; 41 Cal.Jur.2d 399, § 13.)

We recognize that in *Christie* v. *Commercial Casualty Ins. Co.* (1935), 6 Cal.App.2d 710, 714 [1] [45 P.2d 263], it was held that a laborer (the foreman of the construction work) could recover unpaid wages on a public works performance bond. But there the bond was conditioned "to secure the payment of all work and labor 'of any kind' performed in the course of the construction of the roadway" and the court held that "The language of the bond leaves no doubt it was furnished for the direct benefit and protection of those who perform work or supply materials for the roadway in accordance with the contract, although they may not be parties to that instrument." ▉ The bond in issue here is conditioned for the benefit of the obligee county and by no possible view of its language can it be held to have been "furnished for the direct benefit and protection" of the principal (the subdivider) or other landowners in the tract. Furthermore, the Christie case does not hold, nor does any authority which has been cited or discovered suggest, that the public body may assign its rights under such a bond to another, as plaintiff alleges has been done in the present case. And insofar as concerns any suggestion that the county's assignee might prosecute the action for the partial or ultimate benefit of the county, section 25203 of the Government Code specifies that the board of supervisors "shall direct and control the prosecution and defense of all suits to which the county is a party . . ." (See also *County of Contra Costa* v. *Soto* (1902), 138 Cal. 57, 60, 62 [70 P. 1019].)

Plaintiff claims, however, that in any event it, as the present owner of the land in the subdivided tract, is a third-party beneficiary under the bond; i.e., one for whose benefit the

roads were to be improved. The same may be said of other purchasers of lots in the tract, as well as of members of the public generally, who would use the roads.[2] What plaintiff seeks by its complaint is not to compel improvement of the subdivision roads, but to recover in full on its own behalf a money judgment representing the cost of such improvement. Such a recovery appears to be authorized neither by the terms of the bond itself nor under any assignment which the county could make of its rights under the bond. (*Cf. County of San Diego* v. *California Water etc. Co.* (1947), 30 Cal.2d 817, 823 [2] [186 P.2d 124, 175 A.L.R. 747].) By the purported assignment here to *one* person the county has attempted to divest itself of the indemnity provided by the bond against the claims of *all* persons. Even if the bond could be construed as having been furnished for the direct benefit of the public, or of all landowners in the tract, the county could not convey such bond, or any interest thereunder, to one of the several interested landowners.

For the reasons stated it follows that the complaint does not, and that plaintiff would be unable to amend to, state a cause of action on the allegedly assigned bond. The trial court was correct in sustaining the amended demurrer without leave to amend and in ordering dismissal of the action.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Spence, J., McComb, J., and Peters, J., concurred.

---

[2] Of course neither plaintiff nor any other lot purchaser comes within the provisions of section 1559 of the Civil Code: "A contract, made *expressly* for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." (Italics added.)